Ray Bourhis, Esq. SBN 53196
Lawrence Mann, Esq. SBN 83698
Bennett M. Cohen, Esq. SBN 90865
**BOURHIS & MANN**
1050 Battery Street
San Francisco, CA 94111
Tel: (415) 392-4660
Fax: (415) 421-0259

Attorneys for Plaintiff ALAN SUKIN

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALAN SUKIN, | ) Case No.: C 07 2829 VRW (E-FILING) |
| Plaintiff, | ) |
| | ) DECLARATION OF BENNETT M.COHEN |
| v. | ) IN SUPPORT OF PLAINTIFF ALAN |
| | ) SUKIN'S MOTION TO REMAND BACK |
| STATE FARM MUTUAL AUTOMOBILE | ) TO STATE COURT |
| INSURANCE COMPANY, THE | ) |
| COMMISSIONER OF THE CALIFORNIA | ) DATE :   Thursday, August 16, 2007 |
| DEPARTMENT OF INSURANCE and | ) TIME :   2:00 P.M. |
| DOES 1 – 20, inclusive, | ) PLACE:  Courtroom 6, 17th Floor |
| | ) |
| Defendants. | ) [Filed concurrently with Plaintiff's Notice of |
| | ) Motion and Motion to Remand; [Proposed] |
| | ) Order] |
| | ) |
| | ) TRIAL DATE:  NONE SET |
| | ) |
| | ) |

I, Bennett M. Cohen, hereby declare:

1.    I am one of the attorneys engaged to represent Plaintiff in the instant action.  I have personal knowledge of the facts stated herein and, if called to testify I could and would so testify.

1

1     2.     Based upon my review of the file, this case was filed in Superior Court in and for

2   the County of San Francisco on April 20, 2007.  Defendant State Farm Mutual Automobile

3   Insurance Company were served on April 27, 2007.  Defendant Commissioner of the California

4   Department of Insurance was also served on May 3, 2007 and was granted an open extension to

5   answer.

6     3.     Attached hereto as Exhibit A is a true and correct copy of Plaintiff's complaint

7   filed in this action with the file-endorsed stamp of the court. The custom and practice of Bourhis

8   & Mann is that on receipt of the file-endorsed copy from the court, this copy of the complaint is

9   placed and maintained in the files of Bourhis & Mann which are themselves maintained in the

10  ordinary business of the office -- and this complaint was retrieved from the aforesaid files.

11     I declare under penalty of perjury that the foregoing is true and correct.  Executed this 2[th]

12  day of July, 2007, at San Francisco, California.

13

14

15

16

17  BENNETT M. COHEN

18

19

20

21

22

23

24

25

26

27

28

Case No.:  C 072597 JSW (E-FILING)
DECLARATION OF BENNETT M. COHEN IN SUPPORT OF PLAINTIFF EDWARD CONTRERAS'
MOTION TO REMAND BACK TO STATE COURT

1  Ray Bourhis, Esq. SBN 53196
   Lawrence Mann, Esq. SBN 83698
2  **BOURHIS & MANN**
   1050 Battery Street
3  San Francisco, CA 94111
   Tel: (415) 392-4660
4  Fax: (415) 421-0259
5
6  Attorneys for Plaintiff, ALAN SUKIN

**F I L E D**
San Francisco County Superior Court

APR 2 0 2007

GORDON PARK-LI, Clerk
BY: _____ JUN P. PANELO
                    Deputy Clerk

**CASE MANAGEMENT CONFERENCE SET**

SEP 2 1 2007 -9:00 AM

**DEPARTMENT 212**

7
8                    **SUPERIOR COURT OF CALIFORNIA**
9                    **CITY AND COUNTY OF SAN FRANCISCO**
10
11 ALAN SUKIN,                          ) Case No.:
12          Plaintiff,                  ) **C G C - 0 7 - 4 6 2 5 7 7**
                                        ) **COMPLAINT FOR BREACH OF**
13 v.                                   ) **CONTRACT, BREACH OF THE**
                                        ) **COVENANT OF GOOD FAITH AND**
14 STATE FARM MUTUAL AUTOMOBILE         ) **FAIR DEALING, INTENTIONAL**
   INSURANCE COMPANY, STATE FARM        ) **MISREPRESENTATION, INTENTIONAL**
15 INSURANCE COMPANIES, THE             ) **INFLICTION OF EMOTIONAL**
                                        ) **DISTRESS, MANDAMUS, AND**
16 COMMISSIONER OF THE CALIFORNIA       ) **REQUEST FOR JURY TRIAL**
   DEPARTMENT OF INSURANCE and          )
17 DOES 1 – 50, inclusive,              )
                                        )
18          Defendants.                 )
19 _____
20      Plaintiff ALAN SUKIN ("SUKIN") hereby requests a jury trial on all issues in this
21 action.
22      COMES NOW, Plaintiff SUKIN and alleges as follows:
23                              **I.**
                            **BACKGROUND**
24
25      1.    Plaintiff is and at all relevant times was a resident of the State of California.
26      2.    Upon information and belief, Plaintiff alleges that defendant STATE FARM
27 MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE
28 COMPANIES (hereinafter both "STATE FARM") are and at all times herein mentioned were

---

EXHIBIT "A"

1 | corporations authorized to transact and transacting the business of insurance in the State of
2 | California.

3 |       3.     The California Department of Insurance ("DOI") is a governmental agency unit of
4 | the State of California, and operates independently under the control of an elected Insurance
5 | Commissioner ("COMMISSIONER") pursuant to Insurance Code §12906.  The
6 | COMMISSIONER is required by Insurance Code § 12905 to maintain offices in San Francisco
7 | and the COMMISSIONER does so.

8 |       4.     The true names or capacities, whether individual, corporate, associate, or
9 | otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff who therefore
10 | sues said Defendants by such fictitious names.  Plaintiff is informed and believes and on such
11 | information and belief alleges that each of the Defendants sued herein as a DOE is legally
12 | responsible in some manner for the events and happenings referred to herein, and will ask leave
13 | of this court to amend this complaint to insert their true names and capacities in place and instead
14 | of the fictitious names when the same become known to Plaintiff.

## II.
## FIRST CAUSE OF ACTION

**(Breach of Contract against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and DOES 1 - 10)**

     As and for a FIRST CAUSE OF ACTION, Plaintiff complains against defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and DOES 1 – 10 and alleges:

      5.     Plaintiff incorporates by reference each and every paragraph of the complaint as though fully set forth in this cause of action.

      6.     On or about August 18, 2000, Plaintiff was a Network Architect/Project Manager, the owner of his own business, insured under and purchased defendant STATE FARMS' Disability Insurance Policy No. HOA476329-05 (the "POLICY," attached hereto as Exhibit A).

      7.     Under the POLICY: "Total Disability or Totally Disabled means complete incapacity, as the result of your Injury or Sickness:

---

2

1           1) to perform the major, substantial or material duties pertaining to an occupation

2 as defined herein for remuneration or profit.

3           2) which requires the regular care of a Physician other than yourself. (Exhibit A,

4 p.6.)

5      8.     Under Plaintiff's POLICY, disability benefits shall equal $9,000/month, payable

6 to age 65. (Exhibit A, p.3.)

7      9.     At all times relevant, Plaintiff's occupation was that of a Network

8 Architect/Project Manager.

9      10.     On or about December 27, 2002, Plaintiff slipped and fell on a wet bathroom floor

10 in a restaurant, suffering severe and permanently disabling injuries to his cervical spine, upper

11 back, and carpal tunnels of both wrists.

12      11.     Plaintiff submitted his claim for disability benefits with STATE FARM

13 MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE

14 COMPANIES on or about March 15, 2003.

15      12.     Throughout the period of his disability, Plaintiff performed all obligations

16 required of him by the POLICY. Plaintiff intended and expected thereby to be assured of peace

17 of mind and financial and economic security as a result of STATE FARM MUTUAL

18 AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES'

19 obligations to Plaintiff under the POLICY herein at issue.

20      13.     On or about March 18, 2003, STATE FARM MUTUAL AUTOMOBILE

21 INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES employee Jim Tucker,

22 acting in his capacity as a STATE FARM MUTUAL AUTOMOBILE INSURANCE

23 COMPANY, STATE FARM INSURANCE COMPANIES Health Claim Examiner, employee

24 and as an authorized company representative, intentionally misrepresented to Plaintiff that since

25 Mr. SUKIN was already on disability under a separate mortgage disability insurance policy Mr.

26 SUKIN could not receive benefits under the POLICY.

27      14.     On or about March 15, 2004, STATE FARM MUTUAL AUTOMOBILE

28 INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES employee Marylyn

---

3

Case No.
**Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.**

1   Robins, acting in her capacity as a STATE FARM MUTUAL AUTOMOBILE INSURANCE

2   COMPANY, STATE FARM INSURANCE COMPANIES Health Claim Examiner, employee

3   and as an authorized company representative, intentionally misrepresented to Plaintiff that since

4   Mr. SUKIN was already on disability under a separate mortgage disability insurance policy Mr.

5   SUKIN could not receive benefits under the POLICY.

6          15.    Despite Plaintiff's medical condition, and absent any evaluation of Plaintiff's

7   disability by a physician of STATE FARM MUTUAL AUTOMOBILE INSURANCE

8   COMPANY, STATE FARM INSURANCE COMPANIES' choosing, STATE FARM

9   MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE

10  COMPANIES failed to pay Plaintiff any benefits under the aforesaid POLICY until August 25,

11  2005.

12         16.    During the adjustment of Plaintiff's disability insurance claim, from March 15,

13  2003 through the present, Mr. SUKIN has been in severe, mind numbing pain, and has been

14  required to take narcotic and other pain medications, including through a surgically inserted pain

15  medications pump, to control the pain. During this time, Mr. SUKIN suffered severe

16  psychological distress, as his lack of disability benefits caused him to sell first one family home,

17  then sell a second, replacement family home, remove his children from school and move from

18  the San Francisco Bay Area. As a direct result of Mr. SUKIN's severe pain, extensive pain

19  medications, the above misrepresentations and psychological distress, Mr. SUKIN lacked the

20  mental capacity to have a full understanding of his rights, and to deal with the Defendants'

21  disability insurance POLICY and Defendants' actions thereunder, and was not mentally

22  competent to understand the nature, purpose and effect of the POLICY, Plaintiff's obligations (if

23  any), and Defendants' actions under the POLICY. As a direct and proximate result of STATE

24  FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE

25  COMPANIES' continuing to adjust Plaintiff's claim, Plaintiff's aforesaid lack of mental

26  capacity, and the above misrepresentations, Plaintiff deferred filing suit.

27         17.    Plaintiff at all times supplied STATE FARM MUTUAL AUTOMOBILE

28  INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES with ongoing reports

1  from his medical doctors who had examined Plaintiff and found him totally disabled from his

2  occupation, and did everything else required of him by the POLICY.

3         18.      Notwithstanding its obligation to do so, Defendants STATE FARM MUTUAL

4  AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and

5  Does 1-10 have failed until August 26, 2005 to pay Plaintiff the disability benefits to which he is

6  entitled under the POLICY.  Said failure constituted a material breach of the POLICY.

7         19.      As a direct and proximate result of said breach, Plaintiff has been injured and

8  damaged in an amount to be determined according to proof at trial.

9         WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as

10  hereinafter set forth.

### III.
### SECOND CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing**
**Against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**STATE FARM INSURANCE COMPANIES and DOES 1 - 20)**

15         As and for a SECOND CAUSE OF ACTION, Plaintiff complains against Defendants

16  STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM

17  INSURANCE COMPANIES and DOES 1 – 20 and alleges:

18         20.      Plaintiff incorporates by reference each and every paragraph of the complaint as

19  though fully set forth in this cause of action.

20         21.      At all times herein relevant, said Defendants agreed to act in good faith and deal

21  fairly with Plaintiff when they issued the POLICY.  Said Defendants thereby assumed a special

22  relationship with, and fiduciary-like obligations to, Plaintiff, and agreed to abide by its said

23  duties.  Nevertheless, Defendants refused and failed to act in good faith and deal fairly with

24  Plaintiff, and breached said obligations, as is set forth more particularly below.

25         22.      In the absence of a reasonable basis for doing so, and with full knowledge and/or

26  conscious disregard of the consequences, defendant STATE FARM MUTUAL AUTOMOBILE

27  INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES has failed and refused

28  to pay Plaintiff the benefits owed under the POLICY and the laws of California.

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

23.    Plaintiff alleges that defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES designed a scheme and conspired to produce a biased internal "medical review" that would provide a pretext for the non-payment of Plaintiff's disability benefits.  This scheme includes, but is not limited to the following:

a.    Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES employs in-house medical personnel, knowing that these medical personnel will write reports and or issue opinions disavowing Plaintiff's disability, thereby providing a pretext for the non-payment of Plaintiff's benefits;

b.    Plaintiff further alleges that defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES had previously employed, and continues to employ, the services of in-house medical personnel for the purpose of providing nonobjective medical reports and or opinions to be used  pretexts for denying legitimate disability claims;

24.    Additionally, said Defendants engaged and continue to engage in a course of conduct to further their own economic interest and in violation of their contractual and fiduciary obligations to Plaintiff including, but not limited to:

a.    Misrepresenting pertinent provisions and coverage of the POLICY at issue;

b.    Failing to objectively evaluate Plaintiff's claim and attempting to find reasons not to pay the claim rather than conducting a full and fair investigation;

c.    Searching for bases upon which to deny rather than grant policy benefits, including but not limited to forcing Plaintiff to submit to a biased medical examination or threatening to so do;

d.    Unreasonably failing to pay the benefits due under the POLICY;

e.    Wrongful withholding of disability benefits owing to Plaintiff;

f.    Failing to place the financial interests of Plaintiff on an equal par with

6

1    their own financial interests;

2        g.        Forcing Plaintiff to hire an attorney to institute litigation to recover the

3    amounts due him under his insurance POLICY;

4        h.        Other wrongful and illegal conduct according to proof at trial.

5        25.    Defendants' actions were part of a pattern and practice of denying and terminating

6    long-term disability income claims on specious bases in order to reduce overall reserves and

7    improve the company's financial condition.

8        26.    In doing the acts listed above, Defendants breached the covenant of good faith

9    and fair dealing, and engaged in unfair claims settlement practices.

10        27.    Defendants continue to engage in the aforementioned acts, and said conduct and

11    bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing Plaintiff

12    continuing damage as described herein beyond the date of the filing of this action.

13        28.    As a direct and proximate result of the aforementioned conduct of Defendants,

14    Plaintiff has been and continues to be damaged in an amount in excess of the jurisdiction of this

15    court, to be determined at the time of trial.

16        29.    As a further, direct and proximate result of the aforementioned conduct of

17    Defendants, Plaintiff has suffered mental and emotional distress including, but not limited to,

18    fear, aggravation, depression, and anxiety and has thereby incurred general damages in a sum in

19    excess of the jurisdiction of this Court to be determined according to proof at time of trial.

20        30.    As a further, direct and proximate result of the aforementioned conduct of

21    Defendants, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys'

22    fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at

23    the time of trial.

24        31.    As a further, direct and proximate result of the aforementioned conduct of

25    Defendants, Plaintiff has suffered other special damages in amounts according to proof at the

26    time of trial which include, but are not limited to, the lack of availability of said sums to him.

27        32.    The conduct of Defendants as described above was despicable and fraudulent and

28    was further done willfully, oppressively, maliciously, and with conscious disregard of the rights

7

1  of Plaintiff, and with the intent to annoy, harass or injure Plaintiff such that Plaintiff is entitled to

2  a recovery of exemplary damages.

3      WHEREFORE, Plaintiff prays judgment against defendant, as hereinafter set forth.

4                                    IV.
                           **THIRD CAUSE OF ACTION**
5

6  **(Intentional Misrepresentation against Defendants STATE FARM MUTUAL
   AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES
7                          and DOES 1- 30)**

8      As and for a THIRD CAUSE OF ACTION, Plaintiff complains against Defendants

9  STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM

10  INSURANCE COMPANIES and DOES 1 – 30 and alleges:

11      33.    Plaintiff incorporates by reference each and every paragraph of the complaint as

12  though set forth in this cause of action.

13      34.    On or about March 18, 2003, STATE FARM MUTUAL AUTOMOBILE

14  INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES employee Jim Tucker,

15  acting in his capacity as a STATE FARM MUTUAL AUTOMOBILE INSURANCE

16  COMPANY, STATE FARM INSURANCE COMPANIES Health Claim Examiner, employee

17  and as an authorized company representative, intentionally misrepresented to Plaintiff that since

18  Mr. SUKIN was already on disability under a separate mortgage disability insurance policy Mr.

19  SUKIN could not receive benefits under the POLICY.

20      35.    On or about March 15, 2004, STATE FARM MUTUAL AUTOMOBILE

21  INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES employee Marylyn

22  Robins, acting in her capacity as a STATE FARM MUTUAL AUTOMOBILE INSURANCE

23  COMPANY, STATE FARM INSURANCE COMPANIES Health Claim Examiner, employee

24  and as an authorized company representative, intentionally misrepresented to Plaintiff that since

25  Mr. SUKIN was already on disability under a separate mortgage disability insurance policy Mr.

26  SUKIN could not receive benefits under the POLICY.

27      36.    Said representations were false, in that Defendants intentionally misstated the

28  terms of Plaintiff's POLICY and California and Federal law, and was made with the intent to

                                    8
                               Case No.
**Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.**

1   deceive and defraud Plaintiff, and in bad faith and was made for the purpose of depriving

2   Plaintiff of the right to receive POLICY benefits, and was made to force Plaintiff to seek legal

3   counsel to recover the disability benefits he was due.

4       37.     Upon information and belief, defendant STATE FARM MUTUAL

5   AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES has a

6   pattern and practice of delaying the payment of disability benefits without cause in order to

7   increase profits.

8       38.     In the POLICY, and at its inception, STATE FARM MUTUAL AUTOMOBILE

9   INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES represented to

10  Plaintiff that it would pay and continue to pay monies to Plaintiff when defendant STATE

11  FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE

12  COMPANIES determined that Plaintiff was disabled from his occupation.  At the time said

13  representation was made by defendant, it was false and in violation of the minimum standards in

14  California for total disability.  At the time said representation was made, defendant STATE

15  FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE

16  COMPANIES was acting with the intent to deceive and defraud Plaintiff, in bad faith, and to

17  further STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM

18  INSURANCE COMPANIES's financial interest at the expense of Plaintiff's financial interests.

19      39.     Said representation was false and was made with the intent to deceive and defraud

20  Plaintiff, was made in bad faith, and was made for the purpose of depriving Plaintiff of the

21  POLICY benefits, and was made to force Plaintiff to seek legal counsel to recover the disability

22  benefits he was due.

23      40.     As a direct and proximate result of the aforementioned conduct of Defendants,

24  Plaintiff has been damaged in an amount in excess of the jurisdiction of this court, to be proven

25  at trial.

26      41.     As a further, direct and proximate result of the aforementioned conduct of

27  Defendants, Plaintiff has suffered mental and emotional distress including, but not limited to,

28  fear, aggravated depression, nervousness, humiliation and anxiety and has thereby incurred

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

1   general damages in a sum in excess of the jurisdiction of this Court to be determined according

2   to proof at time of trial.

3         42.     As a further, direct and proximate result of the aforementioned conduct of

4   Defendants, Plaintiff has been obliged to expend or incur liability for costs of suit, attorney's fees

5   and related expenses in an amount not yet fully ascertained, but which will be submitted at the

6   time of trial.

7         43.     As a further, direct and proximate result of the aforementioned conduct of

8   Defendants, Plaintiff has suffered other special damages in amounts according to proof at the

9   time of trial which include, but are not limited to, the lack of availability of said sums to him.

10  The conduct of Defendants as described above was despicable and fraudulent and was further

11  done willfully, oppressively, maliciously, and with conscious disregard of the rights of Plaintiff,

12  and with the intent to annoy, harass or injure Plaintiff such that Plaintiff is entitled to a recovery

13  of exemplary damages.

14        WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

15  hereinafter set forth.

16  ## V.
## FOURTH CAUSE OF ACTION

17  

18  ### (Intentional Infliction Of Emotional Distress Against
Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
STATE FARM INSURANCE COMPANIES and DOES 1 - 40)

19  

20        As and for a FOURTH CAUSE OF ACTION, Plaintiff complains against

21  Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE

22  FARM INSURANCE COMPANIES and DOES 1 – 40 and alleges:

23        44.     Plaintiff reincorporates by reference each and every paragraph of the Complaint

24  as though fully set forth in this cause of action.

25        45.     Defendants had access to Plaintiff's medical records, and were aware, at all

26  relevant times, that Plaintiff was disabled from his occupation as a Network Architect/Project

27  Manager and that he relied on his disability benefits for financial support.

28  ///

Case No.
**Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.**

46.     With full knowledge of Plaintiff's precarious condition, including but not limited to his severe and permanently disabling injuries to his cervical spine, upper back, and carpal tunnels of both wrists, severe pain, extensive pain medications, severe psychological injuries, sleeping problems, and of the fact that he was entitled to total disability benefits under the POLICY, Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and Does 1 – 40 failed to pay him the benefits owed under his policy.

47.     With full knowledge of Plaintiff's precarious condition, and of the fact that he was entitled to disability benefits under the POLICY, Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and Does 1- 40 failed to pay Plaintiff his benefits until August 26, 2005.

48.     Specifically, but not exclusively, Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and Does 1 – 40 failed to pay Plaintiff benefits for total disability by misrepresenting California law, by misrepresenting Plaintiff's medical condition, by ignoring the wealth of medical information supporting Plaintiff's disability, and by misrepresenting Plaintiff's rights under his POLICY.

49.     Furthermore, Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and Does 1 – 40 did no independent investigation of Plaintiff's medical condition or his work conditions, or the usual and customary duties of a Network Architect/Project Manager.

50.     With full knowledge of Plaintiff's precarious condition, and of the fact that he was entitled to disability benefits under the POLICY, Defendants STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES and Does 1 – 40 conspired to provide a pretext for delaying Plaintiff's disability benefits.

51.     Plaintiff alleges that defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES receives substantial financial gain from such unfair claims handling practices.

///

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

52.    In so doing, Defendants pursued an outrageous course of conduct, intentionally and/or recklessly, proximately causing Plaintiff severe emotional distress, shock and other highly unpleasant emotions.

53.    Defendants conduct caused Plaintiff severe emotional distress, anxiety and despair, all for the purposes of injuring Plaintiff, and increasing Defendants' profits, while inflicting severe emotional distress and avoiding a valid claim.

54.    As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has been damaged in the amount of the disability benefits due and owing to him and continuing hereinafter until fully paid.

55.    As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has suffered mental and emotional distress including, but not limited to, frustration, depression, nervousness, and anxiety and has thereby incurred general damages in an amount to be determined according to proof at time of trial.

56.    As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has been obliged to expend and/or incur liability for costs of suit, attorneys' fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

57.    As a further, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, the lack of availability of said sums to him.

58.    The conduct of Defendants as described above was despicable and fraudulent and was further done willfully, oppressively, maliciously, and with conscious disregard of the rights of Plaintiff, and with the intent to annoy, harass or injure Plaintiff such that Plaintiff is entitled to a recovery of exemplary damages.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

# VI.

## FIFTH CAUSE OF ACTION

### (Writ of Mandamus: Commissioner of the California Department of Insurance)

59.     Plaintiff incorporates by reference each and every paragraph of his Complaint as though set forth in this cause of action.

60.     The California Department of Insurance (hereinafter "DOI") is a governmental agency unit of the State of California, and operates independently under the control of an elected Insurance Commissioner ("hereinafter COMMISSIONER") pursuant to Insurance Code §12906. The COMMISSIONER is required by Insurance Code § 12905 to maintain offices in San Francisco and the COMMISSIONER does so.

61.     The COMMISSIONER must approve all group disability insurance policies for sale, issuance or delivery in California pursuant to Insurance Code §10270.9.  The COMMISSIONER is required to rigorously apply standards in order to "prevent, in respect to disability insurance, fraud, unfair trade practices and insurance economically unsound to the insured." §10291.5(a)(1).   Further, the COMMISSIONER is prohibited by law from approving any disability policy which is uncertain, ambiguous or likely to mislead a person to whom the policy is offered, delivered or issued. §10291.5(b)(1).

62.     On information and belief, Plaintiff alleges that pursuant to Insurance Code §10270.9, the insurer Defendants filed a copy of the policy and or policy form here in issue with the Commissioner.

63.     On information and belief, Plaintiff alleges that pursuant to Insurance Code §10270.9, the Commissioner approved for sale in California the policy and or policy form here in issue.

64.     The Insurance Code prohibits disability policy provisions less favorable in any respect to an insured than required by law; for example, §§10328 and 10390.

65.     Insurance Code § 12921 mandates that "The COMMISSIONER shall perform all duties imposed upon him by provisions of this code and other laws regulating the business of insurance in this State, and shall enforce the execution of such provisions and laws."  Section

Case No.
**Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.**

1   12926 mandates that "The COMMISSIONER shall require from every insurer a full compliance

2   with all provisions of (the insurance) code."

3        66.    Plaintiff alleges that the COMMISSIONER has abused his discretion by

4   approving a policy or policy form, or by allowing defendant insurers to sell the policy and or

5   policy forms her in issue, in violation of the Insurance Code.

6        67.    Insurance Code §12940 provides that "The acts and orders of the

7   COMMISSIONER are subject to such review, or other action by a court of competent

8   jurisdiction, as is permitted or authorized by law."

9        68.    A writ of mandamus is the proper method for Plaintiff to obtain judicial review of

10  the Commissioner's alleged approval of Plaintiff's policy and or policy form.

11       69.    The Insurance Code does not provide an administrative remedy for Plaintiff to

12  contest the Commissioner's alleged approval of Plaintiff's policy and or policy form.

13       70.    Plaintiff has no other plain, speedy and adequate alternative remedy by which to

14  contest the language of her policy and or the Commissioner's approval of the policy and or

15  policy form.

16       71.    On information and belief, Plaintiff hereby alleges that the COMMISSIONER

17  and the DOI have failed to enforce the mandatory minimum requirements of the Insurance Code

18  with respect to policy definitions of disability, and related policy provisions respecting proof of

19  claim, payment of claim, and adjudication of claim, contained in Defendants' insurance policy

20  that are at variance with and less favorable to their insureds and disability claimants than

21  required by California law.

22       72.    On information and belief, Plaintiff alleges that the COMMISSIONER and DOI

23  have failed to perform the duties imposed upon the COMMISSIONER to require compliance

24  with the California Insurance Code, including but not limited to §§790.03(h) and 10291.5, as

25  well as the Fair Claims Settlement Practices Regulations (10 Cal.Admin. Code §2695.1 *et seq*)

26  and various DOI rulings and bulletins dealing with the same or similar subject matter.  The acts

27  and omissions of the DOI have contributed to Defendants' ability to perpetuate the unlawful,

28  fraudulent and or other wrong acts alleged herein.

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

73.    Plaintiff further alleges that the Commissioner has abused his discretion by approving a policy and or policy forms in violation of either Cal.Ins.Code §§10291.5(a) and 10291.5(b)(1), or the Commissioner's own regulations implementing the Insurance Code.

74.    By this action, Plaintiff seeks, in addition to all other remedies sought herein, an order from this Court mandating that the COMMISSIONER exercise his discretion and take such action as he may decide is reasonably necessary to respond to the alleged fraudulent and unlawful conduct of Defendants.

75.    By this action Plaintiff seeks, in addition to all other remedies sought herein, an order from this Court mandating that the COMMISSIONER revoke and or rescind his approval of Plaintiff's policy and or policy forms, pursuant to Cal. Civ. Proc. 1094.5, *Bunnett v. Regents of Univ. of Cal.* (1995) 35 Cal.App.4th 843, 848; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 137; *Peterson v. American Life & Health Ins.Co.* 48 F.3d 404, 410 (9th Cir. 1995); and *Van Ness v. Blue Cross of Cal.* (2001) 87 Cal.App.4th 364, 371-72.

## VII.
## PRAYER FOR RELIEF

### AS TO THE FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION:

WHEREFORE, Plaintiff prays for relief as follows:

1.    General damages for failure to provide benefits under the subject contract of insurance in a sum to be determined at the time of trial;

2.    General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3.    Punitive and exemplary damages except as to the first cause of action;

4.    For costs of suit herein incurred;

5.    For reasonable attorney's fees;

6.    Special damages in an amount according to proof;

7.    For such other and further relief as the Court deems just and proper.

///
///

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

**AS TO THE FIFTH CAUSE OF ACTION:**

WHEREFORE, Plaintiff prays for relief as follows:

8. In addition to all other remedies sought herein, an order from this Court mandating that the COMMISSIONER exercise his discretion and take such action as he may decide is reasonably necessary to respond to the alleged fraudulent and unlawful conduct of Defendants;

9. In addition to all other remedies sought herein, an order from this Court mandating that the COMMISSIONER revoke and or rescind his approval of Plaintiff's policy and or policy forms, pursuant to Cal. Civ. Proc. 1094.5, *Bunnett v. Regents of Univ. of Cal.* (1995) 35 Cal.App.4th 843, 848; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 137; *Peterson v. American Life & Health Ins.Co.* 48 F.3d 404, 410 (9thCir. 1995); and *Van Ness v. Blue Cross of Cal.* (2001) 87 Cal.App.4th 364, 371-72;

10. For such other and further relief as the Court deems just and proper.

DATED: April 18, 2007

Respectfully submitted,

BOURHIS & MANN

By: _____
Lawrence Mann, Esq.
Attorneys for Plaintiff ALAN SUKIN

Case No.
Complaint For Breach Of Contract, Bad Faith, Intentional Misrepresentation, Intentional Infliction, etc.

# EXHIBIT A

# ST TE FARM MUTU L
## AUTOMOBILE INSURANCE COMPANY
### Home Office/Bloomington, Illinois

05-59

INSURED     ALAN J SUKIN

POLICY NUMBER     HA476329 0505

POLICY DATE     AUGUST 18, 2000

$888.50    INITIAL PREMIUM

MEMBERSHIP FEE

QUARTERLY    PREMIUM MODE

 DISABILITY INSURANCE

We, the **STATE FARM MUTUAL** Automobile Insurance Company, will pay you, the Insured, the benefits stated in this policy. These benefits are subject to the provisions, limitations, and exceptions of the policy.

This policy is issued in consideration of:

1. the statements in the application for this policy; and

2. payment of the Membership Fee and Initial Premium, which will keep this policy in force from the Policy Date at 12:01 A.M. Standard Time at your residence until 12:01 A.M. Standard Time of the First Renewal Date.

**ARANTEED RENEWABLE TO AGE 65.** If premiums for this policy are paid when due, or within the Grace eriod, you have the right to continue this policy in force until Age 65.

**YOUR PREMIUMS MAY BE CHANGED.** We may change the table of premium rates for this policy at any time. Any such change shall apply only to premiums due on or after the effective date of change. The amount due on each renewal date will be the renewal premium in our table of premium rates for your policy in effect at the time of such renewal. The amount will depend on your attained age and original classification.

The premiums for this policy are step rated and are subject to increase automatically with attained age at intervals shown in the Policy Schedule.

## THIRTY DAY RIGHT TO EXAMINE POLICY

Please read this policy and the attached copy of the application carefully. If you do not want the policy for any reason, you may return it to us or one of our agents within 30 days after receipt, it will be void from the beginning, and any money paid will be refunded.

Countersigned _____

Licensed Resident Agent

### GUARANTEED RENEWABLE DISABILITY INCOME POLICY
THIS POLICY IS STEP RATED. THE PREMIUMS WILL INCREASE PERIODICALLY.

rm 97052CA

PAGE 1

**INDEX**

itional Purchase Option . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Benefit Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Total Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Partial Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Rehabilitation Expense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Waiver of Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Recurrent Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Exclusions, Exceptions and Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mutual Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Policy Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

wability Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Termination of Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Application, Endorsements, and Riders, if any, are found following page . . . . . . . . . . . . . . . . . . 14

# POLICY SCHEDULE

INSURED          ALAN J SUKIN

                                          $888.50   INITIAL PREMIUM

POLICY NUMBER    HA476329 0505

POLICY DATE      AUGUST 18, 2000

                                       QUARTERLY  PREMIUM MODE

                 FIRST RENEWAL DATE   NOVEMBER 18, 2000

---

THE BENEFITS AND PREMIUMS SHOWN ON THIS SCHEDULE ARE EFFECTIVE AUGUST 18, 2000.

---

## COVERAGE SUMMARY

| FORM | COVERAGE INFORMATION | QUARTER PREMIU |
|------|----------------------|----------------|
| 052CA | BASIC POLICY - DISABILITY INCOME | $616.5 |
| |   TOTAL DISABILITY BENEFIT | |
| |     MONTHLY INCOME AMOUNT    $9,000 | |
| |     MAXIMUM INCOME PERIOD    TO AGE 65 | |
| |     ELIMINATION PERIOD    90 DAYS | |
| |   PARTIAL DISABILITY BENEFIT | |
| |     MONTHLY INCOME AMOUNT    $4,500 | |
| |     MAXIMUM INCOME PERIOD    6 MONTHS | |
| |   REHABILITATION EXPENSE BENEFIT | |
| |     MAXIMUM AMOUNT    $10,000 | |
| |   ADDITIONAL PURCHASE OPTION DATE | |
| |     AUGUST 18, 2005 | |
| 430 | SOCIAL SECURITY SUPPLEMENT RIDER | |
| |   INITIAL MONTHLY AMOUNT    $1,000 | 61.0 |
| 449 | COST OF LIVING ADJUSTMENT BENEFIT RIDER | |
| 487 | AMENDMENT RIDER | 211.0 |
| 004 | EXCLUSION ENDORSEMENT | |
| 005 | AMENDMENT OF APPLICATION FOR HEALTH INSURANCE | |

NON-TOBACCO DISCOUNT APPLIED

---

QUARTERLY RENEWAL PREMIUMS SUBJECT TO RENEWABILITY PROVISION ON PAGE 1
BASED ON ATTAINED AGE OF INSURED ON EACH RENEWAL DATE

| 16-29 | 30-34 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 |
|-------|-------|-------|-------|-------|-------|-------|-------|
| - | 888.50 | 1172.70 | 1646.70 | 2409.00 | 3422.10 | 4758.50 | 3401.60 |

---

GXGS

# POLICY SCHEDULE

INSURED            ALAN J SUKIN                    $888.50   INITIAL PREMIUM

POLICY NUMBER      HA476329 0505

POLICY DATE        AUGUST 18, 2000

                                    QUARTERLY   PREMIUM MODE

FIRST RENEWAL DATE    NOVEMBER 18, 2000

----------------------------------------------------------------------------------
THE BENEFITS AND PREMIUMS SHOWN ON THIS SCHEDULE ARE EFFECTIVE AUGUST 18, 2000.
----------------------------------------------------------------------------------

## COVERAGE SUMMARY

| FORM | COVERAGE INFORMATION | | QUARTER:<br>PREMIU: |
|------|----------------------|---|-------|
| 052CA | BASIC POLICY - DISABILITY INCOME | | |
| | TOTAL DISABILITY BENEFIT | | $616.5: |
| | MONTHLY INCOME AMOUNT | $9,000 | |
| | MAXIMUM INCOME PERIOD | TO AGE 65 | |
| | ELIMINATION PERIOD | 90 DAYS | |
| | PARTIAL DISABILITY BENEFIT | | |
| | MONTHLY INCOME AMOUNT | $4,500 | |
| | MAXIMUM INCOME PERIOD | 6 MONTHS | |
| | REHABILITATION EXPENSE BENEFIT | | |
| | MAXIMUM AMOUNT | $10,000 | |
| | ADDITIONAL PURCHASE OPTION DATE | | |
| | AUGUST 18, 2005 | | |
| 30 | SOCIAL SECURITY SUPPLEMENT RIDER | | |
| | INITIAL MONTHLY AMOUNT | $1,000 | 61.0( |
| 49 | COST OF LIVING ADJUSTMENT BENEFIT RIDER | | |
| 87 | AMENDMENT RIDER | | 211.0( |
| 04 | EXCLUSION ENDORSEMENT | | |
| 05 | AMENDMENT OF APPLICATION FOR HEALTH INSURANCE | | |

NON-TOBACCO DISCOUNT APPLIED

----------------------------------------------------------------------------------
QUARTERLY RENEWAL PREMIUMS SUBJECT TO RENEWABILITY PROVISION ON PAGE 1
BASED ON ATTAINED AGE OF INSURED ON EACH RENEWAL DATE
----------------------------------------------------------------------------------

| 16-29 | 30-34 | 35-39 | 40-44 | 45-49 | 50-54 | 55-59 | 60-64 |
|-------|-------|-------|-------|-------|-------|-------|-------|
| 888.50 | 1172.70 | 1646.70 | 2409.00 | 3422.10 | 4758.50 | 3401.60 | |

----------------------------------------------------------------------------------
1 97052CA SCHEDULE              PAGE 3          AGENT CURT COOPER        05-596

Wherever used in this policy:

**Age 65** means the first renewal date on or after your 65th birthday.

**Complications of Pregnancy** means a sickness which is caused by or contributed to by a pregnancy. It must be diagnosed as distinct from normal pregnancy. It does not include any period of time that a normal pregnancy prevents you from performing the duties of an Occupation.

**Elimination Period** means the number of consecutive days after the start of your Total Disability during which the Monthly Income Amount is not payable. The number of days in this period is shown on page 3.

**Hospital** means a legally operated institution having accommodations for the care and treatment of sick or injured resident inpatients which is:

1. licensed as a hospital under the Hospital Licensing Laws of any state; or

2. accredited as a hospital by the Joint Commission on Accreditation of Healthcare Organizations.

This definition shall not include any institution including a hospital or any part of a hospital:

1. operated as a rest home, convalescent home, or home for the aged; or

2. used primarily for the care of convalescent or ambulatory patients.

**Injury** means accidental bodily injury sustained by the Insured after this policy is in force and shall include all injuries sustained as a result of any one accident.

**Mental Disorder** means a neurosis, psychoneurosis, psychopathy, psychosis or other mental, behavioral, or emotional disease, disturbance, or disorder of any kind regardless of the cause or origin.

**Monthly Earnings** means your salary, wages, commissions, bonuses, fees, and income earned for services performed. If you own any portion of a business or profession, it means:

1. your share of the income earned by that business or profession;

2. less your share of business expenses which are deductible for Federal income tax purposes;

3. plus your salary and any contributions to a pension or profit sharing plan made on your behalf.

Monthly Earnings does not include:

1. income from deferred compensation plans, disability income policies, or retirement plans; or

2. income not derived from your vocational activities.

Occupation means, during the first twenty-four months of Total Disability, your occupation at the time such Total Disability began; thereafter it means any occupation for which you are or become reasonably fitted by education, training or experience.

**Partial Disability or Partially Disabled** means incapacity, as the result of an Injury or Sickness:

1. to perform some but not all of the essential duties of an Occupation, as defined herein, for pay or profit; or

2. to perform all the duties of an Occupation on a full-time basis; and

3. which requires the regular care of a Physician other than yourself.

**Physician** means a licensed practitioner of the healing arts performing services within the scope of his/her license as provided by the laws of the state in which his/her services are performed.

**Pre-existing Sickness or Physical Condition** means:

1. an Injury or Sickness for which medical advice or treatment was recommended by or received from a Physician within a twenty-four (24) month period preceding the effective date of coverage of the Insured; or

2. the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a twenty-four (24) month period preceding the effective date of coverage of the Insured.

**Sickness** means any sickness or disease of the Insured first manifesting itself after this policy is in force and shall include all complications arising therefrom.

**Total Disability or Totally Disabled** means complete incapacity, as the result of your Injury or Sickness:

1. to perform the major, substantial or material duties pertaining to an occupation as defined herein for remuneration or profit.

2. which requires the regular care of a Physician other than yourself.

## BENEFIT PROVISIONS

**Total Disability Benefit.** We will pay the Monthly Income Amount shown on page 3 for each month your Total Disability continues after the Elimination Period. We will pay this benefit when your Total Disability:

1. is caused by Injury or Sickness;

2. starts while this policy is in force; and

3. is continuous.

This benefit stops for a continuous period of Total Disability when:

1. you are no longer Totally Disabled;

2. you have received payments for the Maximum Income Period shown on page 3; or

3. you reach Age 65.

If your Total Disability starts after your 64th birthday your Maximum Income Period is twelve (12) months or to Age 65, whichever is greater.

Total Disability resulting from an Injury will be considered as starting while this policy is in force if:

1. Total Disability starts within 30 days of your Injury; and

2. your Injury occurs while this policy is in force.

Any Monthly Income Amount payable for less than a month will be computed at a daily rate of 1/30th of the Monthly Income Amount.

Partial Disability Benefit. We will pay the Monthly Income Amount for Partial Disability shown on page 3 for each month your Partial Disability:

1. is caused by Injury or Sickness; and

2. immediately follows a period of Total Disability for which the Monthly Income Amount for Total Disability has been paid; and

3. is continuous.

We will pay this benefit provided your Monthly Earnings are less than the Monthly Income Amount for Total Disability.

This benefit stops for a continuous period of Partial Disability when:

1. you are no longer Partially Disabled;

2. you have received benefits for the Maximum Income Period for Partial Disability shown on page 3; or

3. you reach age 65.

Only one Maximum Income Period for Partial Disability will be paid for any one period of Total Disability or Recurrent Disability.

The Partial Disability Monthly Income Amount will be paid for each month you continue to be Partially Disabled, but not to exceed a Maximum Income Period of 6 months.

This Partial Disability Benefit will not be payable during any period for which you receive a Monthly Income Amount for Total Disability.

Any Partial Disability Benefit payable for a period of less than one month shall be computed at a daily rate equal to 1/30th of the Partial Disability Monthly Amount.

**Waiver of Premium.** If the Monthly Income Amount for Total Disability has been payable for three consecutive months, we will waive each premium or installment subsequently falling due while Total Disability continues and the Monthly Income Amount for Total Disability is payable. The waiver of premium will continue this policy and any attached riders in force until the end of the period for which the premium or installment was waived. You have the right to resume payment of premiums after this benefit ends.

**Rehabilitation Expense Benefit.** If you participate in a vocational rehabilitation program, or educational program for retraining purposes, during a period for which Monthly Income for Total Disability is payable, we will pay for expenses actually incurred for such expenses as tuition, books and special equipment required in such rehabilitation program, up to but not to exceed the Rehabilitation Expense Benefit Maximum Amount shown on page 3.

To qualify for the benefits under this provision, your participation in the program must be approved by your attending Physician, should reasonably be expected upon completion to allow you to return to an Occupation and be approved by us in writing prior to your commencement in the program.

If you continue to be Totally Disabled as defined in the policy, participation in a rehabilitation program will not of itself be considered evidence of recovery from Total Disability, notwithstanding that you may, as a part of the program, perform some or all of the substantial and material duties of an Occupation.

Any benefits payable under this provision shall be reduced by all sums paid or payable for rehabilitation expenses under the provision(s) of any other policy issued by us.

**Recurrent Disability.** A recurrence of Total Disability from the same or related cause(s) will be deemed a continuation of the prior period if the recurrent period:

1. follows a prior period during which the Monthly Income Amount was payable; and

2. occurs while this policy is in force.

Such recurrent Total Disability will not be subject to a new Elimination Period or a new Maximum Income Period.

After you have returned to an Occupation and have been gainfully employed on a full-time basis for at least six (6) consecutive months, any recurrence of Total Disability for the same or related cause(s) will be deemed a new period of Total Disability.

Form 97052CA

On the fifth anniversary of the Policy Date, you have the right to purchase an additional disability income policy from us without evidence of medical insurability, if:

1. you meet the financial standards and age and Occupation class requirements for issue and participation limits that are in effect on the fifth anniversary of the Policy Date;

2. your attained age on the fifth anniversary of the Policy Date is no more than 54;

3. application for the policy is made within 31 days of the fifth anniversary of the Policy Date shown on page 3; and

4. the required premium is submitted with the application.

The new policy will be on the form then issued by us most comparable to this policy. It will be subject to the following conditions:

1. the maximum Monthly Income Amount for Total Disability cannot exceed the amount that is in force for this policy at time of issue;

2. any conditions excluded by rider on this policy may also be excluded on the new policy;

3. the premium will be determined from our table of premium rates in effect at the time the new policy is issued, based on your age and classification when the new policy is issued; and

4. the new policy will not cover a Total or Partial Disability that exists at the time it is issued.

## EXCLUSIONS, EXCEPTIONS AND LIMITATIONS

1. If Total Disability results from two or more causes, the Monthly Income Amount payable shall be limited to the amount payable for Total Disability resulting from a single cause. For the purpose of this policy Injury or Sickness sustained while you are Totally Disabled as a result of a prior Injury or Sickness shall not be deemed to result in Total Disability so long as the prior Total Disability continues.

2. This policy does not cover Total Disability or any other loss caused or contributed to by:

   (a) any attempt at suicide, whether sane or insane, or any intentionally self-inflicted injury;

   (b) war, declared or undeclared, or any act or hazard of war;

   (c) Injury sustained or Sickness contracted while you are in the armed services of any country. The pro rata unearned premium for any period of such services shall be returned to you upon request;

Form 97052CA

Printed in U.S.A.

# EXCLUSIONS, EXCEPTIONS AND LIMITATIONS (CONTINUED)

(d) Injury or Sickness to the extent you are entitled to benefits under, or obtain any settlement related to, any Workers' Compensation or Occupational Diseases Law, or any other state disability law or program;

(e) your participation in the commission of an assault or felony; or

(f) Injury or Sickness which results from the use of marijuana, narcotic drugs, hallucinogens, barbiturates, amphetamines, or tranquilizers which were not prescribed for you by a Physician.

3. **Mental Disorder.** The total amount payable under this policy for any period of Total Disability caused or contributed to by a Mental Disorder shall not exceed a cumulative lifetime maximum of 24 months. If you are a resident patient in a Hospital when this lifetime maximum is reached, this limitation will not apply while you remain continuously confined provided that the confinement is medically necessary to the treatment of your Mental Disorder. This limitation will not extend the Maximum Income Period shown on page 3.

**Pre-existing Condition Limitations.** This policy does not cover any loss incurred or disability which is caused by or results from a Pre-existing Sickness or Physical Condition as defined herein which is not fully disclosed on the application for this insurance, subject to the Time Limit on Certain Defenses provision.

# TERMINATION OF COVERAGE

Subject to the payment of premiums when due, or within the Grace Period, coverage under this policy shall terminate when you attain Age 65.

# GENERAL PROVISIONS

**Entire Contract: Changes.** This policy, (with the application and attached papers) is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions.

**Time Limit on Certain Defenses:**

1. **Misstatements in the Application.** After twenty-four (24) months from the Policy Date only fraudulent misstatements in the application may be used to void the policy or deny any claim for loss incurred after such twenty-four (24) month period. When benefit limits are increased after the Policy Date, the twenty-four (24) month period for the additional coverage begins on the date the increased benefits became effective.

Form 97052CA

# GENERAL PROVISIONS (CONTINUED)

2. **Pre-existing Conditions.** No claim for loss incurred or disability starting after twenty-four (24) months from the effective date of coverage will be reduced or denied because a sickness or physical condition not excluded by name or specific description effective on the date of loss had existed before the effective date of your coverage. When benefit limits are increased after the Policy Date, the twenty-four (24) month period for the additional coverage begins on the date the increased benefits became effective.

**Your Right to Request Cancellation.** You have the right to cancel this policy at any time by written notice delivered or mailed to us. Such cancellation will be effective upon receipt or on such later date as you state in such notice. We may waive these requirements by confirming the date and time of cancellation to you in writing. We will return promptly the pro rata unearned portion of any premium paid. Cancellation shall not prejudice any claim starting prior to the effective date of cancellation.

**Installment Privileges.** You may elect to pay any premium due in installments agreed upon by you and us. Failure to pay any installments when due or within the grace period shall be construed to be a request for cancellation of this policy, effective on the last day of such grace period.

**Grace Period.** This policy has a 31 day grace period. During the grace period, the policy will stay in force. This means that if any premium or installment thereof is not paid on or before the date it is due, it may be paid during the following 31 days.

**Reinstatement.** If the renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by an agent expressly authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent requires an application, you will be given a conditional receipt for the premium. If the application is approved, the policy will be reinstated as of the approval date. Unless we have previously written you of our disapproval, the policy will be reinstated on the 45th day after the date of the conditional receipt.

The reinstated policy will cover only loss that results from an Injury sustained after the date of reinstatement or Sickness that starts more than 10 days after such date. In all other respects your and our rights remain the same, subject to any provisions noted on or attached to the reinstated policy.

Any premiums we accept for a reinstatement will be applied to a period for which premiums have not been paid. No premiums will be applied to any period more than 60 days before the reinstatement date.

**Notice of Claim.** Written notice of claim must be given to us or one of our agents within 30 days after a covered loss starts or as soon as reasonably possible. Notice should include your name and the policy number.

**Claim Forms.** When we receive the notice of claim, we will send the forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time limit stated in the Proofs of Loss section.

**Proofs of Loss.** Written proof of loss must be given to us within 90 days after the end of the period for which we are liable. If it is not reasonably possible to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than twelve (12) months from the time specified unless you were legally incapacitated. Upon our request, you shall sign any authorization(s) necessary for us to obtain earnings and income information (including, but not limited to, bank, financial and employment records, income tax and Social Security filings) directly from any person or entity. When there is a loss, you shall answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

**Time of Payment of Claims.** Indemnities payable under this policy will be paid periodically upon receipt of proper written proof of such loss.

**Payment of Claims.** Benefits will be paid to you unless subject to a valid assignment. Accrued benefits unpaid at your death will be paid to your estate.

If benefits are payable to your estate or to an insured who cannot give a valid release, we may pay benefits up to $1,000 to a person related to you by blood or marriage whom we consider to be entitled to the benefits. We shall be discharged to the extent of any such payment made in good faith.

**Physical Examination and Autopsy.** We have the right to have you examined at our expense as often as reasonably necessary while a claim is pending. Any such examinations will be conducted by one or more physicians or vocational specialists of our choice.

We have the right to defer or suspend payment of benefits if you fail to attend an examination or fail to cooperate with the person conducting the examination. In such a case disability benefits may be resumed, provided that the required examination occurs within a reasonable time and benefits are otherwise payable.

We may also have an autopsy done unless prohibited by law.

**Legal Actions.** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after thirty-six (36) months from the time written proof of loss is required to be given.

**Misstatement of Age.** If your age has been misstated, the benefits will be those the premium paid would have purchased at the correct age.

**Tobacco Free Discount.** When the premium for this policy has been reduced because you are receiving a tobacco free discount such discount will apply only so long as you continue to be tobacco free. If you cease to qualify according to the company's standards for the tobacco free discount, the discount will be discontinued on the next premium due date.

**Unpaid Premium.** When a claim is paid, any premium due and unpaid may be deducted from the claim payment.

**Assignment.** No assignment of interest under this policy shall be binding upon us until it is received by us. o not assume any responsibility for the validity of an assignment.

**Conformity With State Statutes.** Any provision of this policy which, on the Policy Date, is in conflict with the laws of the state in which you reside on that date is amended to conform to the minimum requirements of such laws.

**Relation of Earnings to Insurance.** The Monthly Income Amount payable under this policy may be reduced if you have other valid loss of time coverage that applies to the same period of Total Disability.

The benefit reduction will be made when the total monthly benefits from all valid loss of time coverage are greater than your monthly earnings at the time Total Disability starts.

The reduced Monthly Income Amount will be determined from the formula $\frac{A}{B} \times C$ where:

A is your monthly earnings at the time Total Disability starts;

B is the total amount of monthly benefits from all valid loss of time coverage you have; and

C is the Monthly Income Amount shown on page 3.

In this formula, your monthly earnings means the greater of:

1. your actual net monthly earnings at the time Total Disability started; or

2. your average net monthly earnings during the two years just before Total Disability started.

If your benefit is reduced because of other valid loss of time coverage we will refund part of the premium you have paid. The refund will be based on the premiums paid for this policy during the two years just before Total Disability started. The proportion of premium refunded will be the same as the proportion the Monthly Income Amount was reduced.

This provision will not reduce the total monthly benefits payable under all valid loss of time coverage to less than $200.

"Valid loss of time coverage" as used herein includes all loss of time coverage provided by organizations subject to regulation by the United States or by the insurance law of any state of the United States, the District of Columbia, or any province of Canada.

# MUTUAL CONDITIONS

**Membership.** The membership fee specified in this policy is in addition to the premium and is not refundable except as provided on page one of this policy. While this policy is in force, you are entitled to vote at all meetings of members and to receive any dividends applicable to this and like policies, as may be declared by the Board of Directors.

**Annual Meeting.** The annual meeting of the members of State Farm Mutual Automobile Insurance Company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting. In that case, but not otherwise, due notice shall be mailed to each member at the address disclosed in this policy at least ten days prior thereto.

IN WITNESS WHEREOF, THE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY has caused this policy to be signed by its President and Secretary at Bloomington, Illinois, and countersigned on page one by a duly licensed resident agent of the Company.

Secretary                                President

# COST OF LIVING ADJUSTMENT BENEFIT RIDER

This Cost of Living Adjustment Benefit Rider constitutes an additional benefit attached to and made a part of this policy. All the provisions of the policy not in conflict with the provisions of this rider shall be made a part of this rider.

## DEFINITIONS:

Wherever used in this rider:

**Consumer Price Index** for the year Total Disability payments starts means the **Consumer Price Index for All Urban Consumer, United States City Average, All Items ("CPI-U")** for October of the prior calendar year before the start of Total Disability payments. The Consumer Price Index for the current year of Total Disability is the CPI-U for October of the prior calendar year before the most recent anniversary of the start of Total Disability payments.

The Consumer Price Index is published by the Bureau of Labor Statistics. If the method for determining the Consumer Price Index is changed, or if it is no longer published, it will be replaced by some other index that we determine serves the same purpose.

## BENEFIT:

When this rider is in force, we will pay a Cost of Living Adjustment Benefit for each month in excess of twelve consecutive months that the Total Disability Benefit has been payable under the policy to which this rider has been attached. The Cost of Living Adjustment Benefit will apply to the Total Disability Benefit, Partial Disability Benefit if such policy benefit became payable, and the optional Social Security Supplement Rider if coverage is in effect for the Insured.

The Cost of Living Adjustment Benefit payable is in addition to the Monthly Income Amount shown on page 3 of the policy and is calculated as follows:

$$\text{Cost of Living Adjustment Benefit Amount} = \left(\frac{\text{Consumer Price Index for current year of Total Disability}}{\text{Consumer Price Index for the year Total Disability payments started}} - 1\right) \times \text{Monthly Income Amount payable as shown on page 3}$$

However, in no event will we reduce the Monthly Income Amount payable under the policy should the Consumer Price Index be less in the current year than it was for the year Total Disability began. Should this occur, however, no Cost of Living Adjustment Benefit Amount will be payable.

The Cost of Living Adjustment Benefit Amount will be subject to a five percent (5%) annual maximum, and an overall maximum amount equal to the Monthly Income Amount shown on page 3 of the policy for the claim for which the Cost of Living Adjustment Benefit Amount was payable.

## CONSIDERATION:

The insurance provided by this rider is granted in consideration of the statements in the application and the payment of premiums as specified in the Policy Schedule.

## EFFECTIVE DATE:

This rider shall become effective on the date specified in the Policy Schedule and shall terminate concurrently with the policy.

Issued by the **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** of Bloomington, Illinois.

*Laura P. Sullivan*
Secretary

*Edward B. Rust Jr.*
President

Form 99449

Printed in U.S.A.

# SOCIAL SECURITY SUPPLEMENT RIDER

This Social Security Supplement Rider constitutes an additional benefit attached to and made a part of this policy. All the provisions of the policy not in conflict with the provisions of this rider shall be made a part of this rider.

**DEFINITIONS:**

Wherever used in this rider:

Social Security means the disability or retirement programs established under the federal Social Security Act or the Railroad Retirement Act as now constituted or hereafter amended.

**BENEFIT:**

When this rider is in force, we will pay a Social Security Supplement benefit when the Basic Policy Total Disability Benefit is payable under the policy to which this rider is attached. The Social Security Supplement benefit will not be payable for any day that the Basic Policy Total Disability benefit is not also payable.

The Social Security Supplement benefit amount for each of the first six months this benefit is payable is the Social Security Supplement Initial Monthly Amount shown in the Policy Schedule on page 3.

After the Initial Monthly Amount has been payable for six months, no further benefits will be payable under this rider unless we have proof that you have currently applied for Social Security benefits. We must be given prompt notice of your eligibility for, and the amount of, such Social Security benefits. In the event of an unfavorable ruling on your application, we have the right to appeal on your behalf, if you have not already done so.

After we receive proof that you have currently applied for Social Security benefits, the monthly amount for the seventh and subsequent months this benefit is payable will be the Initial Monthly Amount reduced by any benefits payable by Social Security for the same month. No additional reduction in this monthly amount will be made if subsequent cost of living adjustments increase the monthly amount received from Social Security.

Any Social Security Supplement benefit payable for less than a month will be computed at a daily rate of 1/30th of the appropriate monthly amount.

Social Security Benefits may be awarded in a lump sum. If you are the recipient of such a lump sum award, you must immediately provide us with a copy of the award. If you do, we will not recover benefit payments we have already made under this rider.

We will consider a lump sum award to be made in equal monthly installments to the extent it applies to a period for which we have not yet made benefit payments under this rider.

If it is unclear as to which period the lump sum applies, we will consider it to be paid for sixty monthly periods for which we have not yet paid benefits under this rider.

During your Total Disability, legislated automatic increases may be made to your Social Security Benefits. These increases will not be included in computing this benefit.

**CONSIDERATION:**

The insurance provided by this rider is granted in consideration of the statements in the application and the payment of premiums as specified in the Policy Schedule.

**EFFECTIVE DATE:**

This rider shall become effective on the date specified in the Policy Schedule and shall terminate concurrently with the policy.

Issued by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY of Bloomington, Illinois.

*Laura P. Sullivan*                                    *Edward B. Rust Jr.*

Secretary                                                   President

Form 99430

Printed in U.S.A.

# AMENDMENT RIDER

Anything to the contrary notwithstanding, this policy is amended in the following respects:

Exclusion 2.(d) has been amended to read:

"(d) Injury or Sickness to the extent you are entitled to benefits under, or obtain any settlement related to, any Workers' Compensation or Occupational Diseases Law."

This rider shall become effective on the date specified in the Policy Schedule and shall terminate concurrently with the policy.

Issued by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, of Bloomington, Illinois.

*Laura P. Sullivan*

Secretary

*Edward B Rust Jr.*

President

Form 99487

In consideration of the reinstatement of this policy, it is hereby understood and agreed that the insurance thereunder shall not cover nor shall any benefit be payable for

ALAN J SUKIN FOR ANY DISEASE, DISORDER, SURGICAL PROCEDURE OR INJURY TO THE LUMBOSACRAL AREA OF THE BACK, INCLUDING VERTEBRAE, INTERVERTEBRAL DISKS, MUSCLES, COMPLICATING SPINAL ARTHRITIS, SCIATICA, SCIATIC NEURITIS, AND RADICULITIS

anything in the policy to the contrary notwithstanding.

Effective 12:01 A.M. Standard Time, _____ AUGUST 18, 2000 _____ Attached to and

forming a part of policy number _____ HA476329 05 _____

Issued to _____ ALAN J SUKIN _____

_____

by the State Farm Mutual Automobile Insurance Company, of Bloomington, Illinois.

*Laura P. Sullivan*
Secretary

*Edward B Rust Jr.*
President

Countersigned *October 19 2000* , at *San Ramon*

by _____
Licensed Resident Agent

Signed and Accepted _____
Insured

*10-19-2000*
Date

THIS COPY TO BE SIGNED, DATED AND
WITNESSED ON DELIVERY

Form 99004

Printed in U.S.A.

STATE FARM MUTUAL Automobile Insurance Company
Bloomington, Illinois

## AMENDMENT OF APPLICATION FOR HEALTH INSURANCE

I, _____ ALAN J SUKIN _____, hereby amend my application

dated_____ AUGUST 18, 2000 _____ as follows:

ISSUE WITH AN EXTRA PREMIUM OF 25% FOR ALAN J SUKIN.

I hereby agree that these changes shall be an amendment to and form a part of the original application and of the policy issued thereunder, and that they shall be binding on any person who shall have or claim any interest under such policy.

Dated _San Ramon_ at _October 19, 2000_

_____

Signature of Agent as Witness          Signature of Applicant

Policy No. _____ HA476329 05 _____

THIS COPY, ATTACHED TO POLICY, TO BE SIGNED,
DATED AND WITNESSED ON DELIVERY

Form 99005

Printed in U.S.A.

## VERIFICATION

I, ALAN SUKIN am the plaintiff in the above-entitled action. I have read **COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL MISREPRESENTATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, MANDAMUS, AND REQUEST FOR JURY TRIAL**, and know the contents thereof; and I certify that the matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on my information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _18th_ day of ___April___, 2007, at ___Folsom___, California.

_____
ALAN SUKIN

---

1

VERIFICATION

**PROOF OF SERVICE**
*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

*U.S. District Court, Northern District of California, Case No. C07- 07-2829 VRW*

I am a resident of the State of California, over the age of eighteen years and not a party to this action. My business address is 1050 Battery Street, San Francisco, California 94111. On July 2, 2007, I will serve the following documents:

DECLARATION OF BENNETT M. COHEN IN SUPPORT OF PLAINTIFF ALAN SUKIN'S MOTION TO REMAND BACK TO STATE COURT

in the manner as provided by Rule 5(b) of the Federal Rules of Civil Procedure by placing a true copy of the document(s) listed above, enclosed in a sealed envelope, addressed as set forth below, for collection and mailing on the date and at the business address shown above following our ordinary business practices. I am readily familiar with this business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that a sealed envelope is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid. I am employed in the county where the mailing described below occurred, and am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I placed a true copy of the specified document(s) in a sealed envelope(s) with postage thereon fully prepaid. The envelope(s) will be deposited with the United States Postal Service on this day in the ordinary course of business in San Francisco, California.

| | |
|---|---|
| **FOR DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY:**<br>Robert R. Pohls, Esq., SBN 131021<br>POHLS & ASSOCIATES<br>12657 Alcosta Blvd., Ste. 150<br>San Ramon, CA 94583<br>Trel: (9825) 973-0300<br>Ffax: (925) 973-0330<br>rpohls@califehealth.com | **COMMISSIONER FOR THE CALIFORNIA DEPARTMENT OF INSURANCE**<br>Julian Standen, Esq.<br>Deputy Attorney General<br>455 Golden Gate Avenue,, Ste. 1100<br>San Francisco, CA 94102<br>phone: (415) 703-5535<br>email: julian.standen@doj.ca.gov |

(X) **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed at San Francisco, California, on July 2, 2007.

_____
Mary M. Martin

3

Case No.:  C 072597 JSW (E-FILING)
**DECLARATION OF BENNETT M. COHEN IN SUPPORT OF PLAINTIFF EDWARD CONTRERAS'**
**MOTION TO REMAND BACK TO STATE COURT**

**PROOF OF SERVICE**
*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

**U.S. District Court, Northern District of California, Case No. C07- 07-2829 VRW**

I am a resident of the State of California, over the age of eighteen years and not a party to this action. My business address is 1050 Battery Street, San Francisco, California 94111. On July 2, 2007, I will serve the following documents:

DECLARATION OF BENNETT M. COHEN IN SUPPORT OF PLAINTIFF ALAN SUKIN'S MOTION TO REMAND BACK TO STATE COURT

in the manner as provided by Rule 5(b) of the Federal Rules of Civil Procedure by placing a true copy of the document(s) listed above, enclosed in a sealed envelope, addressed as set forth below, for collection and mailing on the date and at the business address shown above following our ordinary business practices. I am readily familiar with this business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that a sealed envelope is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid. I am employed in the county where the mailing described below occurred, and am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I placed a true copy of the specified document(s) in a sealed envelope(s) with postage thereon fully prepaid. The envelope(s) will be deposited with the United States Postal Service on this day in the ordinary course of business in San Francisco, California.

**FOR DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY:**
Robert R. Pohls, Esq., SBN 131021
POHLS & ASSOCIATES
12657 Alcosta Blvd., Ste. 150
San Ramon, CA 94583
Trel: (9825) 973-0300
Ffax: (925) 973-0330
rpohls@califehealth.com

**COMMISSIONER FOR THE CALIFORNIA DEPARTMENT OF INSURANCE**
Julian Standen, Esq.
Deputy Attorney General
455 Golden Gate Avenue,, Ste. 1100
San Francisco, CA 94102
phone: (415) 703-5535
email: julian.standen@doj.ca.gov

**(X) (FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed at San Francisco, California, on July 2, 2007.

_____
Mary M. Martin

3

Case No.: C 072597 JSW (E-FILING)
**DECLARATION OF BENNETT M. COHEN IN SUPPORT OF PLAINTIFF EDWARD CONTRERAS' MOTION TO REMAND BACK TO STATE COURT**