Robert R. Pohls (California Bar #131021)
**POHLS & ASSOCIATES**
12657 Alcosta Boulevard, Suite 150
San Ramon, California  94583
Telephone:  (925) 973-0300
Facsimile:  (925) 973-0330

Attorney for Defendant **State Farm
Mutual Automobile Insurance Company**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN SUKIN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INSURANCE COMPANIES, THE COMMISSIONER OF THE CALIFORNIA DEPARTMENT OF INSURANCE and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. C07-2829-VRW<br><br>**DECLARATION OF ROBERT R. POHLS IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>DATE:              September 13, 2007<br>TIME:               2:00 p.m.<br>COURTROOM:   6 (Hon. Vaughn R. Walker) |

I, ROBERT R. POHLS, declare:

1.  I am an attorney at law, licensed to practice before all the Courts of the State of California and admitted to practice before the United States District Court in and for the Northern District of California.  I am the principal of the law firm of Pohls & Associates and lead counsel for defendant State Farm Mutual Automobile Insurance Company ("State Farm") in this action.  I also am the custodian of State Farm's original files regarding the benefit claims that plaintiff Alan Sukin made under State Farm's disability income insurance policy number HOA476329-05 (the "Policy").  I therefore have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, could and would competently testify to those facts.

2.  The document attached to this declaration as Exhibit 1 is a true and correct copy of a letter from State Farm's original files regarding the benefit claims that plaintiff made under the

Policy.  That letter is dated March 18, 2003 and, among other things, states:  "Mr. Sukin is actually doing somewhat better at work.  His behavior is gradually coming under control.  He is working extensively with Dr. Rome.  Overall, I am optimistic that Mr. Sukin will continue to show some significant improvement."

3.  The documents attached to this declaration as Exhibit 2 are true and correct copies of phone call records from State Farm's original files regarding the benefit claims that plaintiff made under the Policy.  Among other things, those records reflect telephonic communications between State Farm and plaintiff on March 14, 2003, March 21, 2003, June 20, 2003, July 1, 2003 and August 5, 2003.

4.  The document attached to this declaration as Exhibit 3 is a true and correct copy of a letter from State Farm's original files regarding the benefit claims that plaintiff made under the Policy.  That letter is dated January 30, 2004 and, among other things, states that an attorney named Alfred Buchta had been "retained to represent the interests" of plaintiff in connection with his benefit claims under the Policy.

5.  The document attached to this declaration as Exhibit 4 is a true and correct copy of a facsimile transmission from State Farm's original files regarding the benefit claims that plaintiff made under the Policy.  That facsimile transmission is dated March 2, 2006 and includes a written claim in which plaintiff asserted, among other things, that State Farm's handling of his claim for benefits under the Policy caused him to incur approximately $100,000 in attorneys' fees, suffer $150,000 in damages attributable to high interest rates/credit damage, experience $300,000 in losses in connection with the sale of unspecified assets, and lose $150,000 in personal assets and financial strains.  indicates that plaintiff made a demand for $3 million to settle his claims against State Farm.

6.  The documents collectively attached to this declaration as Exhibit 5 are true and correct copies of letters from State Farm's original files regarding the benefit claims that plaintiff made under the Policy.  The first is a letter from Mr. Buchta which is dated October 12, 2006 and, among other things, offers to resolve plaintiff's claims against State Farm for $3 million.  The second is a letter from Lawrence Mann (one of plaintiff's attorneys of record

herein) which is dated March 30, 2007 and, among other things, offers to resolve plaintiff's claims against State Farm for $3.5 million.

7. I am informed and believe, and on that basis state, that State Farm is a mutual company which was organized under the laws of the State of Illinois and which has its principal place of business within the State of Illinois. To confirm my belief in that regard, I first conducted an online search of the California Secretary of State's records on August 23, 2007. Among other things, that online search revealed that the California Secretary of State recognizes State Farm as a corporation which was organized under the laws of the State of Illinois and which has its principal place of business in the State of Illinois. To further confirm my belief in that regard, I also conducted an online search of the California Department of Insurance's records on August 23, 2007. Among other things, that online search revealed that the California Department of Insurance recognizes State Farm as an organization which is domiciled in the State of Illinois. True and correct copies of the printed results of those online searches are collectively attached to this declaration as Exhibit 6.

I declare under penalty of perjury that the foregoing facts are true and correct.

Executed on August 23, 2007 at San Ramon, California.

_____

ROBERT R. POHLS

DECLARATION OF ROBERT R. POHLS IN
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
Case No. C07-2829-VRW

*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

U.S. District Court, Northern District of California
Case No. C07-2829-VRW

# *EXHIBIT 1*

to the

**DECLARATION OF ROBERT R. POHLS
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**INTEGRATED**
**PAIN**
**MANAGEMENT,**
**INC.**

Jacob Rosenberg, M.D., Q.M.E.
Lawrence Weil, M.D., Q.M.E.
Kasra Amirdelfan, M.D., Q.M.E.
Francis Pecoraro, M.D., Q.M.E.
Thomas R. Stephenson, M.D.
Howard Rome, Ph.D., Q.M.E.
Mary Gould, N.P.
Akiko Ogura, N.P.

March 18, 2003

RE:     PATIENT:        SUKIN, ALLAN
        DOI: 10/28/96          Claim #: 78800095290
        Physician:            Jacob Rosenberg, M.D.
        DOS:                  03/18/03

## SPECIAL REPORT

This represents a review of Dr. Slucky's report of March 12, 2003. Dr. Slucky feels that Mr. Sukin's fusion is solid. We note that Mr. Sukin is actually doing somewhat better at work. His behavior is gradually coming under control. He is working extensively with Dr. Rome. Overall, I am optimistic that Mr. Sukin will continue to show some significant improvement. We are weaning his opiates slowly and trying to control his pain with various medications. We will see him back in clinic in the next several weeks hopefully to continue his weans and continue his medications. At some point in the future, we may wish to pursue the options outlined by Dr. Slucky, including spinal cord stimulation. Mr. Sukin may or may not be a candidate for an intrathecal morphine pump; although, at the current time, he is doing well enough without increasing doses of opiates that I think we will not need to pursue that particular option.

If you have any questions, please do not hesitate to contact me. A total of 15 minutes were spent in the preparation and dictation of this report.

I declare under penalty of perjury that the information accurately described the information provided to me and except as noted herein that I believe it to be true. I further declare under penalty of perjury that I have not violated the provisions of

Work Comp

JAN 2 6 2004

Carrie

2485 High School Ave., Suite #201, Concord, CA 94520
Tel: 925 691 9806   Fax: 925 691 9807



INTEGRATED
PAIN
MANAGEMENT,
INC.

Jacob Rosenberg, M.D., Q....
Lawrence Weil, M.D., Q.M.E.
Kasra Amirdelfan, M.D., Q.M.E.
Francis Pecoraro, M.D., Q.M.E.
Thomas R. Stephenson, M.D.
Howard Rome, Ph.D., Q.M.E.
Mary Gould, N.P.
Akiko Ogura, N.P.

RE: SUKIN, ALLAN

PAGE 2

California Labor Code Section 139.3 with regard to the evaluation of this patient, the preparation of the report or the dictation of any procedure.

JACOB ROSENBERG, M.D.

JR:tm
D: 03/18/03
T: 03/23/03

cc: Royal & Sunalliance, Attn: Carol Porackens; Fax (888) 476-2325
    Milton Katz, Esq.; Fax (415) 440-9965
    Andrew Slucky, M.D., Oakland; Fax (510) 444-1397

2485 High School Ave., Suite #201, Concord, CA 94520
Tel: 925 691 9806   Fax: 925 691 9807

Work Comp

JAN 2 6 2004

Carrie

*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

U.S. District Court, Northern District of California
Case No. C07-2829-VRW

# *EXHIBIT 2*

to the

**DECLARATION OF ROBERT R. POHLS**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

```
                    STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
                              CLAIM RECORD FORM - HEALTH
                                      10/25/06
                                                                    PAGE    3
REGIONAL  OFFICE 02
REQ EXAM AYEI   Heidi      Winkle
CLAIM ST-NO 05-07372450


*********************************************************************************
      ACCUMULATORS
*********************************************************************************
                       START                    EARLIEST LATEST
LVL KOL     TYPE STAT  DATE        AMOUNT        SVC DT  SVC DT MAN  EXAM ID APPR ID

*********************************************************************************
      RESERVES
*********************************************************************************
        OPEN    CLOSE    CHANGE   OPEN          RESERVE    CASE
KOL     DATE    DATE     DATE     IND  STAT     AMOUNT     RSRV  EXAM ID APPR ID
A       090401  090401   091001   C    PREV     198000.00
A       090401  091001            C    CURR         .00

*********************************************************************************
      STATISTICAL CLAIM DATA
*********************************************************************************
PROC    ZIP OWNER/     BANK    INST    WRT    CLM                        NO.
ST      LIENHOLDER     ID      TYPE    AGT    AGT    TERR  CITY  CNTY   CHILD
05                             0       5968   5968   01    000   007    00
PAY       MONTHLY    AVIATION  OCC
MODE      PAY IND    RATE      CODE
Q                    0         89

*********************************************************************************
      RIDERS, ENDORSEMENTS AND EXCLUSIONS
*********************************************************************************
                                  EFF
FORM NO           TYPE           DATE
99430         COVERAGE          081800
DESCRIPTION: SOCIAL SECURITY SUPPLEMENT RIDER
99449         COVERAGE          081800
DESCRIPTION: COST OF LIVING ADJUSTMENT BENEFIT RIDER
99004         EXCLU/ENDOR       081800
DESCRIPTION: EXCLUSION ENDORSEMENT
99005         EXCLU/ENDOR       081800
DESCRIPTION: AMENDMENT OF APPLICATION
99487         STAT AMEND        081800
DESCRIPTION: AMENDMENT RIDER - CA STATE DIS INS
*********************************************************************************
      HPAS
*********************************************************************************


                              PHONE CALL RECORD
      EXAM ID: HQ75                                        DATE: 03-14-03
                                                           TIME: 14:11
        DOS:
                                     RETURN PHONE: 925 855 7375   EXT:
      INCOMING:
      OUTGOING: X
PH CONTACT: INSURED
```

---
PHONE MESSAGE:
I explained to the insured that his policy notes in the Exclusions,
Exceptions, and Limitations section that an Injury or Sickness sustained
while he is Totally Disabled as a result of a prior Injury or Sickness shall
not be deemed to result in Total Disability so long as the prior Total
Disability continues.
He said he was thinking of going to a different insurance company.  He
said he got the policies in case something happened to him.  He said the
policy to age 65 would be of more use to him than the 3-yr maximum for
the Mortgage Disability.  He also said he might get an attorney to read the
policy so he could be sure of what his rights are under the policy.  I noted
we would need to speak only with an attorney if there was attorney
involvement.  I said I'd send a letter regarding our conversation and the
exclusion I quoted.
He said he would call Service to request copies of his policies.

---

ADVISE NO GUARANTEE OF COVERAGE:

RB1A1650
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
CLAIM RECORD FORM - HEALTH
10/25/06

REGIONAL OFFICE 02                                    PAGE 34
REQ EXAM AYEI   Heidi         Winkle
CLAIM ST-NO 05-07372449

I spoke with Charlotte. I said the last CF indicated TD to 2/03. She said
she believed it because the insured is still TD and will be for some time.
She didn't give me an exact date, but she said the insured is definitely TD
now. She said she'd talk with the doctor on Monday for more specific info.
I asked if I could call Monday afternoon and perhaps get something in writing
for our file. She said that would be fine.
JAT

ADVISE NO GUARANTEE OF COVERAGE:
    PRE-EXISTING CONDITION:


EXAM ID: HQ75                    PHONE CALL RECORD

                                                      DATE: 03-21-03
    DOS:                                              TIME: 17:20

    INCOMING: X                  RETURN PHONE: 925 200 1967   EXT
    OUTGOING:
PH CONTACT: INSURED

PHONE MESSAGE:
The insured said he hasn't received anything from us in a while. I said the
letter I wrote to him was delayed. I noted we haven't received his SSX2. He
said he never received one. I said it should have come with his Jan payment.
He said he didn't get it and asked me to fax one to him. I suggested that
he give me his doctor's name and number in order to expedite the matter. He
called the doctor's office to find out which office the doctor was working in
today. He called me back and said I should speak with Charlotte at
925-691-9806.
I called the insured back after speaking with Charlotte and said we'd pay
from 1/24-3/24. He thanked me.
He said his attorney may contact us regarding his AV policy. He said he
doesn't understand why he's paying premiums for a policy that he can't use.
He also said his agent told him that any money he received from his
restaurant fall would be asked to be reimbursed to State Farm. I said I

ADVISE NO GUARANTEE OF COVERAGE:
    PRE-EXISTING CONDITION:
didn't have a clue what that meant.
JAT


EXAM ID: HQ75                    PHONE CALL RECORD

                                                      DATE: 01-27-03
    DOS                                               TIME: 16:40

    INCOMING                     RETURN PHONE: 925 934 9660   EXT: 3861
    OUTGOING    X
PH CONTACT   ROYAL & SUNALLIANCE

PHONE MESSAGE:
I left a message for Carol Bracken asking if or when we might receive a
response to our letter. I left my desk and fax numbers.
JAT

ADVISE NO GUARANTEE OF COVERAGE:
    PRE-EXISTING CONDITION:


EXAM ID: LZBN                    PHONE CALL RECORD

                                                      DATE: 01-02-03
    DOS:                                              TIME: 17:06

    INCOMING: X                  RETURN PHONE: 925 855 7375   EXT:
    OUTGOING:
PH CONTACT: ALAN SUKIN-INSURED

PHONE MESSAGE:
Alan called stating he did not receive the check for 8-24/11-24 for $7500.00.

HB1A1650
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
CLAIM RECORD FORM - HEALTH
10/25/06                                                    PAGE  31

REGIONAL OFFICE 02
REQ EXAM AVEI   Heidi      Winkle
CLAIM ST-NO 05-07372449

        EXAM ID: HQ75                                      DATE: 06-24-03
                                                           TIME: 14:43
            DOS
                                RETURN PHONE: 925 691 9806   EXT:
        INCOMING:
        OUTGOING: X
    PH CONTACT: DR. ROSENBERG

    PHONE MESSAGE:
    I left a message asking if the insured's TD has been extended beyond 5/13.
    JAT

    ADVISE NO GUARANTEE OF COVERAGE:
          PRE-EXISTING CONDITION:


                        PHONE CALL RECORD
        EXAM ID: HQ75                                      DATE: 06-23-03
                                                           TIME: 14:49
            DOS:
                                RETURN PHONE: 925 691 9806   EXT:
        INCOMING:
        OUTGOING: X
    PH CONTACT: DR. ROSENBERG

    PHONE MESSAGE:
    Charlotte is out of the office today
    JAT

    ADVISE NO GUARANTEE OF COVERAGE:
          PRE-EXISTING CONDITION:


                        PHONE CALL RECORD
        EXAM ID: HQ75                                      DATE: 06-20-03
                                                           TIME: 16:27
            DOS:
                                RETURN PHONE: 925 691 9806   EXT:
        INCOMING:
        OUTGOING: X
    PH CONTACT: DR. ROSENBERG

    PHONE MESSAGE:
    I asked if the insured's TD has been extended beyond 5/13.  I was told
    Charlotte had the chart, but she is out of the office until Monday.  Her
    hours are 7:30-4.
    JAT

    ADVISE NO GUARANTEE OF COVERAGE:
          PRE-EXISTING CONDITION:


                        PHONE CALL RECORD
        EXAM ID: HQ75                                      DATE: 06-20-03
                                                           TIME: 10:41
            DOS:
                                RETURN PHONE:               EXT:
        INCOMING: X
        OUTGOING:
    PH CONTACT: INSURED

    PHONE MESSAGE:
    The insured asked why his payments stopped again.  I said we sent a
    supplemental form with our last payment and we've not received the form back.
    He said he immediately gave it to his doctor, but the form evidently is just
    sitting on the doctor's desk.  I asked if he could call the doctor to have
    the form sent to us.  He said the doctor isn't going to do anything special
    for him.  He said he's only one of many patients, and he has no control over
    what the doctor does.
    I said I could understand what he's saying, but I noted we need medical
    verification of disability in order to make disability payments.  He said he
    doesn't know what else to do than to get an attorney to make the doctor do

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
CLAIM RECORD FORM – HEALTH
10/25/06

REGIONAL  OFFICE 02                                              PAGE  32
REQ EXAM AYEI    Heidi         Winkle
CLAIM ST-NO 05-07372449

something.  He said he really doesn't want to do that.
I asked what doctor has the form.  He said the clinic is run by Dr.
Rosenberg, but he saw Dr. Stevenson.  He said Dr. Stevenson handed the form
on over to Dr. Rosenberg.  He said we spoke with someone at the doctor's

ADVISE NO GUARANTEE OF COVERAGE:
        PRE-EXISTING CONDITION:
office before and wondered if we could do that again.
I said I'd speak with a specialist and perhaps call the doctor.  I said I'd
give him a call back today.  He said he'd try to obtain the name of a contact
person at the doctor's office.
JAT
(later)
I left a message that Charlotte from the doctor's office is out until Monday.
I said I would be out of the office on Monday and would try to call
Charlotte on Tuesday.
JAT

PHONE CALL RECORD

        EXAM ID: A1N4                                       DATE: 04-17-03
                                                            TIME: 11:35
        DOS:
                                  RETURN PHONE: 925 691 9806    EXT:
        INCOMING: X
        OUTGOING:
PH CONTACT: DR. ROSENBERG'S OFFICE

PHONE MESSAGE:
Charlotte said Jim, the claim handler, had called some time ago asking for a
date for disability.  She apologized it has taken so long, but she did not
have a definitive answer until now.  The doctor saw the Insured on 4/15/03
and has indicated he will be off work for about four more weeks, until about
5/13/03.  I asked if this is a final date or if the Insured will be seeing
the doctor again.  She said it is not a final date, the Insured will be
seeing the doctor, he continues to see the doctor often.  She said she will
be sending something in writing to Jim with this information.  I told her I
will let Jim know.

ADVISE NO GUARANTEE OF COVERAGE:
        PRE-EXISTING CONDITION:

PHONE CALL RECORD

        EXAM ID: AYEI                                       DATE: 04-09-03
                                                            TIME: 08:57
        DOS:
                                  RETURN PHONE: 925 934 9660    EXT:
        INCOMING:
        OUTGOING: X
PH CONTACT: CAROL BRACKEN, C/O ROYAL & SUN

PHONE MESSAGE:
I s/w Carol in follow up our numberous requests for information regarding
Alan Sukin's claim.  They are the WC carrier for his injury.  I explained we
have been trying to obtain information outlined in our letter for several
months.  I went over the questions in our letter sent by Jim Tucker.  As I
was reading each question, Carol indicated to me that Mr. Sukin
will never rtw.  He is not in voc rehab, not feasible.  Also no one else has
requested information except for SS (she said this because I had mentioned a
previous pc in which she indicated she gets lots of correspondence for
this insured).  They are now trying to resolve a structure for a settlement
and it will be a big one.  They have been trying since Aug and Sept of last
year.  Neither party can come up with a figure to agree upon.  There is a big
reserve out on this claim.  So far they have paid close to 1/2 million.  The
settlement will be above and beyond that--for future medical bills and
compensation.
She continued to say Mr. Sukin has many psych conditions too that are a
result of his injury.  He diffenetly has psych and anxiety.  As of 1/03 they

ADVISE NO GUARANTEE OF COVERAGE:

RB1A1650
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
CLAIM RECORD FORM - HEALTH
10/25/06                                            PAGE  30

REGIONAL  OFFICE 02
REQ EXAM AVEI   Heidi       Winkle
CLAIM ST-NO 05-07372449

said he could not handle that right now.
He said on top of the back pain, he also has incontinence problems.  He said
that his pain doctor is in the process of trying to get an MRI approved
through Blue Sheild, his medical carrier.
I again expressed the need for his tax returns.  He said he still did not
want to send them to us.  He asked that we locate where it is required of him
to provide the returns and to have a supv. call him back to explain it to
him.  I told him I would have the claim reviewed and that if we still needed
the returns, a supervisor would call him back.


                          PHONE CALL RECORD

      EXAM ID: HQ75                                    DATE: 07-22-03
                                                       TIME: 11:20
          DOS:
                           RETURN PHONE: 925 855 7375   EXT:

      INCOMING:
      OUTGOING: X
   PH CONTACT: INSURED

   PHONE MESSAGE:
   I left a message for the insured that I was returning his phone call.
   JAT

   ADVISE NO GUARANTEE OF COVERAGE:
          PRE-EXISTING CONDITION:


                          PHONE CALL RECORD

      EXAM ID: HQ75                                    DATE: 07-01-03
                                                       TIME: 12:08
          DOS:
                           RETURN PHONE:               EXT:

      INCOMING: X
      OUTGOING:
   PH CONTACT: INSURED

   PHONE MESSAGE:
   The insured said he has his CF completed and he will send it to us.  He said
   his doctor has suggested he try a pain "pump" to alleviate the disabling
   effects of the back surgery he's had.  He asked what his AV policy excludes.
   I read the exclusion endorsement to him.  He asked me to send the language to
   him in a letter for his reference.  I explained that his AV has a specific
   exclusion; other illnesses and/or injuries might be considered with proper
   proof of loss and as long as his policy remains in effect.
   JAT

   ADVISE NO GUARANTEE OF COVERAGE:
          PRE-EXISTING CONDITION:


                          PHONE CALL RECORD

      EXAM ID: HQ75                                    DATE: 06-27-03
                                                       TIME: 14:22
          DOS:
                           RETURN PHONE: 925 691 9806   EXT:

      INCOMING:
      OUTGOING: X
   PH CONTACT: DR. ROSENBERG

   PHONE MESSAGE:
   Charlotte said the insured will see the doctor next week.  The doctor has
   been out of the office.  That's why the form hasn't been sent.  The insured
   is considered TD until seeing the doctor again.
   JAT

   ADVISE NO GUARANTEE OF COVERAGE:
          PRE-EXISTING CONDITION:


                          PHONE CALL RECORD

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
CLAIM RECORD FORM - HEALTH
10/25/06                                        PAGE  29

REGIONAL  OFFICE 02
REQ EXAM AYE!  Heidi      Winkle
CLAIM ST-NO 05-07372449

      DOB:
                              RETURN PHONE: 408 244 4175   EXT:
   INCOMING:
   OUTGOING: X
PH CONTACT: BRENDA - REST. MAIN OFFICE

PHONE MESSAGE:
S/w Brenda.  She said Alan did file a claim in March of 2003 for a slip and
fall injury. She said their office does not have the details, that we would
need to contact their insurance company, Golden Eagle Insurance at
800-537-8855. She said the claim rep handling the claim is Sherry Prince.

ADVISE NO GUARANTEE OF COVERAGE:
      PRE-EXISTING CONDITION:


                        PHONE CALL RECORD
   EXAM ID: CE64                                    DATE: 08-05-03
                                                   TIME: 10:40
      DOB:
                              RETURN PHONE: 925 828 9380   EXT:
   INCOMING:
   OUTGOING: X
PH CONTACT: FRANKIE JONNIE LUIGI TOO

PHONE MESSAGE:
Called and spoke with the manager who said to call Brenda at the main office
at 408-244-4175 for additional information.

ADVISE NO GUARANTEE OF COVERAGE:
      PRE-EXISTING CONDITION:


                        PHONE CALL RECORD
   EXAM ID: CE64                                    DATE: 08-05-03
                                                   TIME: 10:33
      DOB:
                              RETURN PHONE:              EXT:
   INCOMING:
   OUTGOING: X
PH CONTACT: INSURED

PHONE MESSAGE:
I called the insured to f/up on the 7-14-03 letter requesting the tax
returns. Alan said that he was not going to be sending them in because he
felt it was confidential information and did not feel we needed them. He
asked where in the policy it stated we could ask for tax returns. I told him
we needed them for income verification. He said that his wife works and that
he has money coming in from dividends and that it would not show he was
making less money now.  He said that up until June of 2003 he was still
making about what he was making before he could not work, but that he shut
down his business, TECHWATCH INC. in June of 2003.  He explained that when he
was working he had 30 employees working for him. He said now there are no
employees. He said his tax returns will show an income of 300K.
He said he is still in so much pain.  He said that they are considering
giving him a pain pump in his back that will infuse medication directly on
his spine. He has heard from people that have had the pump that it works
really well and he is hoping it will work for him.

ADVISE NO GUARANTEE OF COVERAGE:
      PRE-EXISTING CONDITION:
I asked him about the slip and fall he had at a restaurant.  He said that it
happened in 12/02, he did not have the exact date, and that it was at a
restaurant called Frankie and Luigis in Dublin, CA.  He said he walked into
the bathroom, where there was no sign up stating the floor was wet, and he
slipped and fell onto his back.  He said that he filed a claim with them, was
given some claim forms to complete, but has not pursued the claim.  I asked
if he had an attorney for the claim. He said no.  He said that he was
completely bed ridden from January through March of 2003 due the to slip and
fall making his back pain worse.  He said that he does not have the strength
right now to pursue a claim for his injuries.  I asked if the slip and fall
caused that much pain, wouldn't you want to pursue what is owed to you?  He

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
CLAIM RECORD FORM – HEALTH
10/25/06

REGIONAL OFFICE 02                                              PAGE  30
REQ EXAM AVEI   Heidi        Winkle
CLAIM ST-NO 05-07372449

---

said he could not handle that right now.
He said on top of the back pain, he also has incontinence problems.  He said
that his pain doctor is in the process of trying to get an MRI approved
through Blue Sheild, his medical carrier.
I again expressed the need for his tax returns.  He said he still did not
want to send them to us.  He asked that we locate where it is required of him
to provide the returns and to have a supv. call him back to explain it to
him.  I told him I would have the claim reviewed and that if we still needed
the returns, a supervisor would call him back.

---

PHONE CALL RECORD

EXAM ID: HQ75                                          DATE: 07-22-03
                                                       TIME: 11:20
    DOS:
                                RETURN PHONE: 925 855 7375   EXT:
    INCOMING:
    OUTGOING: X
PH CONTACT: INSURED

PHONE MESSAGE:
I left a message for the insured that I was returning his phone call.
JAT

ADVISE NO GUARANTEE OF COVERAGE:
       PRE-EXISTING CONDITION:

---

PHONE CALL RECORD

EXAM ID: HQ75                                          DATE: 07-01-03
                                                       TIME: 12:08
    DOS:
                                RETURN PHONE:           EXT:
    INCOMING: X
    OUTGOING:
PH CONTACT: INSURED

PHONE MESSAGE:
The insured said he has his CF completed and he will send it to us.  He said
his doctor has suggested he try a pain "pump" to alleviate the disabling
effects of the back surgery he's had.  He asked what his AV policy excludes.
I read the exclusion endorsement to him.  He asked me to send the language to
him in a letter for his reference.  I explained that his AV has a specific
exclusion; other illnesses and/or injuries might be considered with proper
proof of loss and as long as his policy remains in effect.
JAT

ADVISE NO GUARANTEE OF COVERAGE:
       PRE-EXISTING CONDITION:

---

PHONE CALL RECORD

EXAM ID: HQ75                                          DATE: 06-27-03
                                                       TIME: 14:22
    DOS:
                                RETURN PHONE: 925 691 9806   EXT:
    INCOMING:
    OUTGOING: X
PH CONTACT: DR. ROSENBERG

PHONE MESSAGE:
Charlotte said the insured will see the doctor next week.  The doctor has
been out of the office.  That's why the form hasn't been sent.  The insured
is considered TD until seeing the doctor again.
JAT

ADVISE NO GUARANTEE OF COVERAGE:
       PRE-EXISTING CONDITION:

---

PHONE CALL RECORD

*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

U.S. District Court, Northern District of California
Case No. C07-2829-VRW

# *EXHIBIT 3*

to the

**DECLARATION OF ROBERT R. POHLS
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**



THE **BUCHTA** LAW OFFICES

350 RAILROAD AVENUE • SUITE 210 • DANVILLE • CA • 94526
P.O. BOX 1070 • DANVILLE • CA • 94526
TELEPHONE (925) 743-8900 • FACSIMILE (925) 855-9996
EMAIL: ABUCHTA@PACBELL.NET

ATTORNEY AT LAW

**ALFRED H. BUCHTA**

January 30, 2004

Jim Tucker
State Farm Insurance Companies
P.O. Box 9403
Greeley, CO  80633-9403

Re:    Policy:        HOA476329 05
       Claim:         05 HO7372450
       Policy:        HOA474315 05
       Claim:         05 H07372449
       Loss Date:     June 25, 2001
       My Client:     Alan J. Sukin

Dear Mr. Tucker:

Please be advised that I have been retained to represent the interests of Alan J. Sukin regarding his claims for disability benefits pursuant to the above-referenced policies.

I have reviewed your letter dated March 18, 2003, which I interpret to be your denial letter regarding my client's benefits pursuant to his disability policy (HOA476329-05).   After reading your letter, I am still a bit vague on the basis for your denial of benefits pursuant to the disability policy cited above.  I am attaching a copy of your letter of March 18, 2003, for your reference.

In your second paragraph, you quote a portion of the guaranteed renewal disability income policy after you say that your policies limit total disability benefits to the amount payable for a single cause.  The quoted portion of that policy apparently states that "for the purposes of this policy Injury or Sickness sustained while you are Totally Disabled as a result of a prior Injury or Sickness shall not be deemed to result in Total Disability so long as the prior Total Disability continues."

Are you saying that the fact that Mr. Sukin is receiving benefits pursuant to the Mortgage Disability Income policy that he fulfills the definition of "Total Disability" for purposes of the guaranteed renewable disability income policy?

Furthermore, are you contending that the prior low back injury qualifies as a "prior Injury or Sickness?"

Jim Tucker
January 30, 2004
Page 2


Please provide me with your responses to these questions and any additional information you may have concerning Mr. Sukin's qualification for benefits pursuant to the Guaranteed Renewable Disability Income policy. Furthermore, please confirm that you are denying benefits pursuant to that policy.

I thank you in advance for your courtesy and cooperation in this regard.

                        Very truly yours,



                        ALFRED H. BUCHTA


AHB/ss
cc:  Alan J. Sukin

*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

U.S. District Court, Northern District of California
Case No. C07-2829-VRW

# *EXHIBIT 4*

to the

**DECLARATION OF ROBERT R. POHLS
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**



**A facsimile from**

**To:** Jared Salas
State Farm Insurance
Health Operation Center West
PO BOX 9404
Greeley, CO 80633

TEK

Alan J. Sukin
100 Light Court, Folsom, CA 95630
Tel. 916-987-1341, Fax. 800-304-8187

**Date:** 3/2/2006

**RE:  Policy # A4763290505**

**Comments:   Recovery of Losses due to denying disability claim for several years**

Alan J. Sukin

State Farm Insurance

Health Operation Center West

PO BOX 9404

Greeley, CO 80633


RE:  Alan J. Sukin, 100 Light Court,          )
                                               )
Folsom, CA 95630, *Represented by Self*        )
                                               )
                                               )
     Claim:  Recovery of Losses due            )
                                               )
     to denying disability benefits            )
                                               )
     for several years.                        )
                                               )
                                               )
                                               )
                                               )
                                               )
                                               )
_____)

With respect to my Disability Income Policy #A4763290505, my family and I were victimized by my own

insurance company, State Farm Insurance in denying my claim after (4) four days after evaluation of the

original submittal date of the claim. After I retained an attorney the claim was re-opened, and took

several years to resolve while my financial situation and associated strain on my wife and children was

devastating and irrevocable.


I bought this policy in order to protect my family and me against disaster which ultimately occurred due to

my change in health, and is now permanent.


The fact that State Farm held off from paying out my Disability Income for several years -- contributed to

damages including but not limited to:  irrevocable strain on family and I, personal assets having to be sold

way below value, both my wife and my credit being damaged for the next seven years (having to pay high

interest rates on mortgage, vehicles, etc.), **Trust/Capital Gains** from my father which destroyed a life time of savings from my parents which was suppose to be inheritance, and (1/3) one-third contingent attorneys fees and expenses to recover the disability benefits - "insurance Bad Faith".

ESTIMATE

- Contingent Attorneys Fees as a cost to me as the insured for the "Insurance Bad Faith" of (1/3) one-third of the final re-payment of benefits – Approximately $100K
- High Interest Rates / Credit Damage (Past/Present/Future) Due to Damages - $150K
- Trust – Principal less capital gains taxes permanent loss, and loss of unknown growth of investments if not sold (Approximately $300K)
- Loss on Personal Assets and Financial / Strain on Family and Self $150K

I would like to attempt to settle this claim representing my self for compensatory and punitive damages.

Dated this 2nd day of March, 2006

Alan J. Sukin

*Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.*

U.S. District Court, Northern District of California
Case No. C07-2829-VRW

# *EXHIBIT 5*

to the

**DECLARATION OF ROBERT R. POHLS
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# THE BUCHTA LAW OFFICES

CENTERPOINT BUILDING
18 CROW CANYON COURT • SUITE 325 • SAN RAMON • CA • 94583
TELEPHONE (925) 743-8900 • FACSIMILE (925) 855-9996
EMAIL: ABUCHTA@BUCHTALAW.COM

ATTORNEY AT LAW

**ALFRED H. BUCHTA**

October 12, 2006

Heidi Winkle
Health Claim Team Leader
Health Insurance Department
State Farm Mutual Automobile Insurance Company
PO Box 339403
Greeley, CO 80633-9403

Re:    <u>My Client:</u>    <u>Alan Sukin</u>
     Policy No:      H0A476329-05
     Claim No:      05-H07381487
     Date of Loss:   December 27, 2002
     Claim No:      05-H07372450
     Date of Loss:   June 25, 2001

Dear Ms. Winkle:

    State Farm has two obligations to Alan Sukin relative to his disability claims. First, he is receiving benefits in the amount of $9,000+ per month which are payable until he reaches the age of 65 years. Furthermore, Mr. Sukin has rights with regard to a bad faith claim based on State Farm's failure and refusal to make disability payments of $9,000 to Mr. Sukin for a period of over two years. Although State Farm finally made all payments due to Mr. Sukin, those payments should have begun in March of 2003; however, the payments did not begin until August of 2005, a period of twenty nine months. State Farm's failure to make the $9,000 per month payments to Mr. Sukin for a period of over twenty nine months resulted in substantial negative consequences to Mr. Sukin and his family. We will discuss these consequences in some detail later in this letter.

    <u>Background:</u> On October 13, 1999, Mr. Sukin purchased a mortgage disability policy with benefits of $2,500 per month. Then on August 18, 2002, Mr. Sukin bought an additional disability policy with benefits of $9,000 a month which included a low back exclusion. The next year on June 25, 2001, Mr. Sukin underwent a lumbar fusion and as a result he began receiving mortgage disability payments in the amount of $2,500 per month. There was a time limit on this policy of three years. Then the next year on December 27, 2002, Mr. Sukin unfortunately slipped and fell on a wet floor in a restaurant thereby injuring his neck and upper back. For a period of time after that slip and fall incident, Mr. Sukin was bedridden due to his new set of injuries. Then on March 15, 2003, Mr. Sukin telephoned State Farm reporting his new injury and requesting that benefits be paid pursuant to the second disability policy. At that time Mr. Sukin spoke to Jim Tucker a Health Claim Examiner with State Farm. Shortly after that telephone conversation Mr. Tucker wrote a letter to Mr. Sukin on March 18, 2003, setting forth a convoluted explanation of why State Farm would not pay benefits for "any injuries

*rec'd 10/16/06*
*ST 10/16/06*

Re: My client: Alan Sukin
October 12, 2006
Page 2

associated with your reported accident of December 27, 2002." Mr. Tucker gave the two policies a tortured interpretation. Mr. Tucker states in essence that since Mr. Sukin was already on disability under the mortgage disability policy he could not receive benefits under a separate second disability policy. I am confident that you will agree this is illogical to the extreme. Notwithstanding, no benefits were paid to Mr. Sukin. A copy of Mr. Tuckers March 18, 2003 letter is attached as exhibit 1.

In December of 2003, Mr. Sukin hired myself to assist him with a few different legal matters and after reviewing Mr. Tucker's letter, I wrote to him on January 30, 2004, asking him to explain his tortured interpretation of the two policies. A copy of my letter is attached as exhibit 2. Apparently, a letter was written later by Marylyn Robins on March 15, 2004, again reiterating the same tortured reasoning for failing to provide benefits to Mr. Sukin. A copy of Ms. Robin's letter dated March 15, 2004, is attached as Exhibit 3. It is important to note at this point that based on a review of my file, I never received Ms. Robbins' March 15, 2004 letter; however, that letter was later provided to me by State Farm. In Ms. Robbins' letter State Farm continued with their denial of any disability payments to Mr. Sukin. Throughout the remainder of 2004, State Farm failed to carry out any further investigation or inquiry concerning Mr. Sukin's disability claim concerning his neck and upper back.

We then again renewed our claim for disability benefits under the second disability policy, when I forwarded further documentation on April 4, 2005. A copy of that letter is attached and marked as Exhibit 4.

Then his case was transferred to Heidi Winkle who communicated with me on June 16, 2005 and a copy of her letter is enclosed as Exhibit 5. In that letter, she contended that Dr. Rosenberg maintained that he no longer treated Mr. Sukin. However, on July 14, 2005, Dr. Rosenberg prepared a report stating that Mr. Sukin was, in fact, disabled due to his chronic pain disorder associated with his cervical spine. A copy of Dr. Rosenberg's report is attached as Exhibit 6. On July 9, 2005, I provided you with a complete package of documentation that substantiated our claim for disability benefits relating to areas other than Mr. Sukin's lumbar spine. A copy of that package is marked exhibit 7. Then it was not until July 27, 2005, that Jared Salas of State Farm wrote to me indicating that you would attempt to handle this matter as quickly as possible.

Finally, State Farm made good on their legal duty to Mr. Sukin and forwarded a check for all amounts owed, dated August 26, 2005. The check is in the amount of $271,612.15 and a copy of that check is attached hereto and marked exhibit 9.

Thereafter, my client representing himself, contacted your office with a claim for damages arising from the failure of State Farm to deal with this case in good faith. On April 27, 2006, Heidi Winkle wrote back to Mr. Sukin indicating that State Farm "timely honored your claim for disability stemming from your neck, arm and shoulder." Furthermore, it was represented in your April 27, 2006, letter that the State Farm was not notified of the disability claim to the neck and upper back until "April 2005". As set

Re: My Client:   Alan Sukin
October 2, 2006
Page 3

forth above, the contention that State Farm was not notified until April 2005 is a gross misstatement. This is a further demonstration of State Farm's refusal to accept responsibility for compensating Mr. Sukin. The April 27, 2006 letter is attached and marked Exhibit 9.

## LEGAL ANALYSIS:

Every insurance contract contains an implied covenant of good faith and fair dealing. This covenant imposes a duty on the insured to act in good faith and fairly towards it's insured in handling their claim. Finally every insurance contract imposes a responsibility on the insurance company to meet the reasonable expectations of the policy holder. Gruenberg v. Aetna Ins. Co. (1973) 9 Cal 3rd 566,108CR480. Looking at the timeline of the events of this case compels the conclusion that Mr. Sukin reasonably expected that if he was disabled from a cause other than his low back then he would have coverage pursuant to the disability policy in the amount of $9,000 a month. Simple logic compels the conclusion that since the mortgage disability policy of $2,500 was purchased on October 13, 1999 and the disability policy was purchased on August 18, 2000, Mr. Sukin was specifically purchasing two different policies to cover him for two different disabilities. The mortgage disability policy would protect him for disability for all causes whereas the second disability policy would protected him for disability relating to injuries other than his low back. The purchase of the disability policy on August 18, 2000 was specifically for the purpose of protecting himself and his family from the adverse economic consequences of a disability not related to his low back. That is exactly what happened and it certainly was Mr. Sukin's "reasonable expectations" that he would be covered as a result of the non-low-back injuries sustained by him when he slipped and fell in the restaurant on December 27, 2002.

As you certainly know, State Farm has the burden of proving that a policy excludes a specific condition. See State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal 3rd 94 109CR811. The letter from Mr. Tucker of March 18, 2003 and the letter from Marylyn Robins dated March 15, 2004 attempted to suggest an exclusion for the disability policy because Mr. Sukin was deemed disabled under the mortgage policy. Any reasonable party reading these two contracts would not interpret the contract to say that disability under one policy is considered a disability under the second policy. Both policies stand alone. State Farm stood by the reasoning of Mr. Tucker and Ms. Robins for over two years, despite the illogical nature of their reasoning. That amount to bad faith.

**DELAY:** State Farm had a duty to fully investigate this claim and they were required to inquire into all possible bases that might support Mr. Sukin's claim. State Farm cannot deny a claim without thoroughly investigating the basis for it's denial. Egan v. Mutual of Omaha Ins. Co. (1979) 24 Cal Ap 3rd 809 (157CR482. Any reasonable delay in investigating a claim alone provides sufficient grounds to support a general and punitive damage award. Canne V. Connecticut General Life Ins. Co. (9th CIR., 1988) 867F.2nd 489.

Re: My Client: Alan Sukin
October 12, 2006
Page 4

It is also important to note that the eventual payment of the benefits due to the insured as in this case, does not prevent Mr. Sukin from bringing law suit against State Farmand that is what we plan to do if we cannot resove this matter out of court.  See Sprague v Equifax, Inc. (1985) 166 Cal Ap 3rd 1012, 213CR69.

As you certainly know any ambiguity or uncertainty will be resolved against the insurer in favor of the policy holder. Gray v. Zurich Ins. Co. (1966) 65 Cal 2nd 263, 54 Cal Reporter 104. At the very best, the arguments made by Mr. Tucker and Ms. Robins for two years were based on ambiguous and uncertain language in the two policies.  In fact, State Farm finally concluded (I assume with competent legal advise) that Mr. Sukin was in fact entitled to the benefits of the $9,000 disability policy.  Therefore even State Farm has now resolved the ambiguity and uncertainty in these two policies in favor of Mr. Sukin. This resolution in favor of Mr. Sukin should have occurred early in 2003 instead of later in 2005.

DAMAGES:  Mr. Sukin may recover all damages proximately caused by State Farms breach of their duty of good faith and fair dealing.  These damages include consequential loss, loss of use of the insurance proceeds, general damages, attorney's fees and exemplary damages.  Brandt v. Superior Court (1985) C37 Cal 3rd 813, 210 CR211. In this case Mr. Sukin has suffered damages in each category listed above. Mr. Sukin has *economic damages* in the form of attorney's fees and cost to collect the arrearages owed to Mr. Sukin in the amount of $90,837.50.

Loss of use of the insurance proceeds:  As a result of the failure to pay the benefits due to Mr. Sukin State Farm additionally caused damages in that Mr. Sukin was forced to sell his home at a decreased value since he could not afford to make the house payments without the benefit of the $9,000 a month payments.

Emotional Distress: As a result of the failure of State Farm to make the appropriate payments Mr. and Mrs. Sukin fell behind on their payments for their cars and their house and as a result their credit rating has plummeted.  They are forced to pay additional interest on their present house in Folsom California due to their low credit rating.  Further emotional distress arose from the stress on the marriage between Mr. Sukin and his wife Leslie. Substantial sums were spent on physiologist and those figures can be produced if necessary. Both of Mr. Sukins' children, Brandon and Jordan were forced to move from one school to another and then move again to another school in Folsom. It was difficult enough on the children to exist in a family where dad is disabled and on pain medication, but to throw their lives into a state of turmoil as a result of the added factor of financial deprivation was very difficult for the children.

Needless to say Mr. Sukin suffered substantial emotional distress with having to sell their home and their cars and move twice as a result for their inability to make their house payment. We believe that a payment from State Farm in the amount of $500,000 would be a reasonable sum to compensate them for the distress that Mr. Sukin and his family were forced to endure as a result of State Farms failure to comply with their duty of good faith. Finally it should be noted that we are not contending that State Farm intended to harm Mr. Sukin. However the California case law does not require an intent

Re: My Client:   Alan Sukin
October 12, 2006
Page 5

to harm as a prerequisite to establishing a valid case for breach of State Farms duty of good faith and fair dealing.

The simple fact is that State Farm failed for twenty nine months to make the payments that were due to Mr. Sukin and they failed to make these payments based on their failure to properly investigate and analyze this case. The fact that State Farm came to the realization that they did in fact owe the money and finally paid it does not relieve them of liability for the damages suffered by Mr. Sukin as a result of their earlier failures.

## SETTLEMENT OF MR. SUKINS $9,000 A MONTH PAYMENTS.

At this time Mr. Sukin is prepared to accept a lump sum payment from State Farm in exchange for waiver for his right to receive monthly installment payments of $9,000 until he reaches the age of 65.

Since Mr. Sukins birth date is March 4, 1967 he will turn 65 on March 4, 2032 consequently there are twenty five years and five months between November 4, 2006 and March 4, 2032 and that would be 305 months. Multiplying 305 times $9,000 we have a product of $2,745,000. For the sake of ease of calculation I have not taken into consideration the contractual inflation aspect of this case nor have I reduced the amount of present value in that I believe inflation and the present value factor offset each other.

Therefore we have a total claim in this case of $3,245,000 if we can resolve this case within the next thirty days, Mr. Sukin would be willing to accept an even $3,000,000 and give State Farm a full final release of all obligations on the part of State Farm relating to any and all disability and bad faith action possessed by Mr. Sukin. Please have this matter evaluated at your earliest convenience and contact me with your response within 30 days. I look forward to a prompt, fair and equitable resolution of these issues.

Very truly yours,

ALFRED H. BUCHTA

AHB/mls
Enclosure
cc: Alan Sukin

# RAY BOURHIS ASSOCIATES

*Specializing in Insurance Law*

*www.InsuranceConsumers.com*
*www.RayBourhis.com*

March 30, 2007

**VIA FACSIMILE (970) 395-6342**
ATTN: Ms. Sharon Kidwell-Tynan, Team Leader
STATE FARM INSURANCE COMPANY
Greeley, Colorado

> **Re:** ***Our Client/Your Insured: Alan Sukin***
> ***Policy No.: HOA476329***

Dear Ms. Kidwell-Tynan:

Please be advised that our office represents Alan Sukin with regard to his claim in this matter. Attached please find our Authorization of Attorney Representation.

When you spoke with my assistant, Mary Martin, you advised that you required the Authorization of Attorney Representation along with the amount of our demand on behalf client which is $3.5 million dollars.

As Ms. Diane Tallman is out of the office until Monday, please have her supervisor, Ken Starks, Manager contact our office between 2PM and 3PM (PST) for a conference call between my partner, Ray Bourhis and myself to immediately discuss this claim.

Thank you for your anticipated courtesy and cooperation in this matter.

Sincerely yours,

BOURHIS & MANN

By: *Lawrence Mann*
Lawrence Mann

LM:mmm
Enclosure

***Alan Sukin v. State Farm Mutual Automobile Insurance Company, et al.***

U.S. District Court, Northern District of California
Case No. C07-2829-VRW

# *EXHIBIT 6*

to the

**DECLARATION OF ROBERT R. POHLS**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# California Business Portal

**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of AUG 17, 2007 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | | |
| **Number:** C0129473 | **Date Filed:** 6/18/1928 | **Status:** active |
| **Jurisdiction:** ILLINOIS | | |
| | **Address** | |
| ONE STATE FARM PLAZA | | |
| BLOOMINGTON, IL 61710-0001 | | |
| **Agent for Service of Process** | | |
| DANA SILVER | | |
| 3345 MICHELSON DRIVE 4TH FLOOR | | |
| IRVINE, CA 92612 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# Company Profile

# STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
## ONE STATE FARM PLAZA
### BLOOMINGTON, IL 61710-0001

**Agent for Service of Process**
DANA SILVER, 3345 MICHELSON DRIVE 4TH FLOOR IRVINE, CA 92612
<u>Unable to Locate the Agent for Service of Process?</u>

## Reference Information

| | |
|---|---|
| NAIC #: | 25178 |
| NAIC Group #: | <u>0176</u> |
| California Company ID #: | 0948-0 |
| Date authorized in California: | June 18, 1928 |
| License Status: | UNLIMITED-NORMAL |
| Company Type: | Property & Casualty |
| State of Domicile: | ILLINOIS |

## Lines of Insurance Authorized to Transact

The company is authorized to transact business within these lines of insurance. For an explanation of any of these terms, please refer to the glossary.

AUTOMOBILE
COMMON CARRIER LIABILITY
DISABILITY
FIRE
LIABILITY
MARINE
MISCELLANEOUS
PLATE GLASS

# Company Complaint Information

Company Enforcement Action Documents
Company Performance & Comparison Data
Composite Complaint Studies

# Want More?

Help Me Find a Company Representative in My Area

Financial Rating Organizations

Last Revised - July 27, 2007 11:17 AM
Copyright © California Department of Insurance